ERIK K. SWANHOLT, CA Bar No. 198042
    eswanholt@foley.com
JOHN J. ATALLAH, CA Bar No. 294116
    jatallah@foley.com
COLE K. WALDHAUSER, CA Bar No. 345928
    cwaldhauser@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CA 90071-2418
TELEPHONE:  213.972.4500
FACSIMILE:   213.486.0065

Attorneys for Defendant Mindvalley, LLC

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

NATASHA ALI and AMANDA PERKINS
individually and on behalf of all others similarly
situated,

                                  Plaintiffs,

        vs.

MINDVALLEY, LLC,

                                  Defendant.

Case No. 3:22-cv-08578-SI

**DEFENDANT MINDVALLEY, LLC'S
NOTICE OF MOTION AND MOTION TO
DISMISS PLAINTIFFS' COMPLAINT;
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF**

Complaint Filed:  Dec. 13, 2022

Date:    March 31, 2023
Time:    10:00 a.m.
Judge:   Hon. Susan Illston
Ctrm.:   1

4875-1574-7147.7

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD.**

**PLEASE TAKE NOTICE THAT** on March 31, 2023 at 10:00 a.m., or as soon thereafter as this matter may be heard, in courtroom of the Honorable Susan Illston at the United States District Court for the Northern District of California, Courtroom 1, 17th Floor at the San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Mindvalley, LLC ("Mindvalley") will and hereby does move this Court for an order dismissing, with prejudice, the Complaint filed by Plaintiffs Natasha Ali and Amanda Perkins ("Plaintiffs"), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, on the following grounds:

1.      All of Plaintiffs' claims fail as a matter of law because Plaintiffs fail to plausibly allege facts sufficient to state a claim under California's Automatic Renewal Law—a claim on which each of Plaintiffs' additional claims is predicated;

2.      Plaintiffs' entire class claim is barred by the binding Class Action Waiver to which Plaintiffs previously agreed;

3.      Plaintiffs' claims under the Electronic Funds Transfer Act, and Plaintiff Amanda Perkins' claims for false advertisement and conversion fall outside the period of the respective statutes of limitations;

4.      Plaintiffs lack Article III standing to pursue any of their asserted claims because they have not suffered a concrete harm caused by Mindvalley;

5.      Plaintiffs lack Article III standing to pursue their asserted California claims on behalf of non-California consumers;

6.      Plaintiffs' state law claims—all of which sound in fraud—fail as a matter of law because the allegations do not meet the heightened pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure;

7.      Plaintiffs' claims for equitable relief fail as a matter of law because an adequate legal remedy exists;

8.      Plaintiffs' unjust enrichment claim fails because there is no cause of action for unjust enrichment under California law.

1

        Mindvalley's Motion is further based on this Notice of Motion and Motion, the Memorandum of

2

Points and Authorities, the concurrently filed Request for Judicial Notice and Declaration of John J.

3

Atallah filed in support thereof, the Proposed Order, all filings and pleadings in this action, and on such

4

other and further matters as the Court may consider.

5

DATED:  February 16, 2023                    **FOLEY & LARDNER LLP**
                                             Erik K. Swanholt

6
                                             John J. Atallah

7
                                             Cole K. Waldhauser

8

9
                                             */s/ John J. Atallah*
                                             _____
10                                             John J. Atallah
                                             *Attorneys for Defendant*
11                                             *Mindvalley, LLC*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS TO PLAINTIFFS' COMPLAINT
-2-                                    Case No. 3:22-cv-08578-SI

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     RELEVANT FACTUAL BACKGROUND.......................................................... 2

III.    LEGAL STANDARD........................................................................................... 4

        A.      DISMISSAL UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM ........... 4

        B.      DISMISSAL UNDER RULE 12(B)(1) FOR LACK OF STANDING ......................... 5

IV.     ARGUMENT ........................................................................................................ 6

        A.      PLAINTIFFS' EFTA, FAL, AND CONVERSION CLAIMS ARE TIME-
                BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS......................... 6

                1.      Plaintiffs' Claims Exceed the EFTA's One-Year Statute of
                        Limitations .............................................................................. 6

                2.      Ms. Perkins' Claims Exceed the Three-Year Statute of
                        Limitations under the FAL and for Conversion................................. 7

        B.      THE COMPLAINT FAILS TO STATE A CLAIM PURSUANT TO RULE
                12(B)(6).......................................................................................................... 8

                1.      Plaintiffs' UCL, FAL, CLRA, and EFTA Claims Fail as a Matter
                        of Law Because Plaintiffs Cannot Adequately State a Violation of
                        the ARL.................................................................................... 8

        C.      PLAINTIFFS ARE BOUND BY THE CLASS WAIVER IN DEFENDANT'S
                TERMS & CONDITIONS.................................................................................. 11

                1.      Mindvalley Provided Sufficiently Conspicuous Notice of the
                        Class Waiver .......................................................................... 12

        D.      PLAINTIFFS LACK ARTICLE III STANDING ........................................... 14

                1.      Plaintiffs Lack Standing to Pursue Their Individual Claims ........................ 14

                2.      Plaintiffs Lack Standing to Pursue Claims on Behalf of
                        Consumers Residing Outside of California ....................................... 14

        E.      PLAINTIFFS' UCL, CLRA, FAL, AND COMMON LAW CLAIMS FAIL
                UNDER RULE 9(B) ....................................................................................... 16

        F.      PLAINTIFFS CANNOT RECOVER IN EQUITY ......................................... 18

        G.      UNJUST ENRICHMENT IS NOT AN INDEPENDENT CAUSE OF ACTION........ 19

V.      CONCLUSION.................................................................................................. 20

4875-1574-7147.7

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Federal Cases**

*10E, LLC v. Travelers Indem. Co. of Connecticut*,
  500 F. Supp. 3d 1070 (C.D. Cal. 2020) ........................................................................... 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................... 4, 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................ 4

*Camacho v. JPMorgan Chase Bank*,
  No. 5:14-CV-04048-EJD, 2015 WL 5262022 (N.D. Cal. Sept. 9, 2015) ........................ 6

*Carpenter v. PetSmart, Inc.*,
  441 F. Supp. 3d 1028 (S.D. Cal. 2020) .......................................................................... 15

*Churchill Vill., LLC v. GE Co.*,
  169 F.Supp.2d 1119 (N.D. Cal. 2000) ........................................................................... 15

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ........................................................................................... 5

*Doe I v. Wal-Mart Stores, Inc.*,
  572 F.3d 677 (9th Cir. 2009) ........................................................................................... 5

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*,
  528 U.S. 167 (2000) ......................................................................................................... 5

*Hall v. Time, Inc.*,
  857 Fed. App'x 385 (9th Cir. 2021) ......................................................................... 9, 10

*Ham v. Hain Celestial Group, Inc.*,
  70 F. Supp. 3d 1188 ...................................................................................................... 19

*Harvey v. Google Inc.*,
  No. 15-CV-03590-EMC, 2015 WL 9268125 (N.D. Cal. Dec. 21, 2015) ......................... 6

*Hodges v. Apple Inc.*,
  No. 13-cv-01128-WHO, 2013 WL 4393545 (N.D. Cal. Aug. 12, 2013) ......................... 11

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ......................................................................................... 5

*IntegrityMessageBoards.com v. Facebook, Inc.*,
  No. 18-CV-05286-PJH, 2020 WL 6544411 (N.D. Cal. Nov. 6, 2020) ........................... 18

*Kearns v. Ford Motor Co.*,

567 F.3d 1120 (9th Cir. 2009) ............................................................................ 16, 17

*Koehler v. Litehouse, Inc.*, No. CV 12-04055 SI,
2012 WL 6217635 (N.D. Cal. Dec. 13, 2012) .................................................. 15

*Littlehale v. Hain Celestial Grp., Inc.*,
No. C 11-6342 PJH, 2012 WL 5458400 (N.D. Cal. July 2, 2012) ................... 16

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......................................................... 19

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ...................................................................................... 5, 14

*Meridian Project Sys., Inc. v. Hardin Const. Co., LLC*,
404 F. Supp. 2d 1214 (E.D. Cal. 2005) .......................................................... 16

*Moore v. Kayport Package Exp., Inc.*,
885 F.2d 531 (9th Cir. 1989) .......................................................................... 17

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992) ........................................................................................ 18

*Morales v. Unilever U.S., Inc.*, No. 2:13-2213 WBS EFB,
2014 WL 1389613, .......................................................................................... 15

*Mort v. United States*,
86 F.3d 890 (9th Cir. 1996) ............................................................................ 18

*Noll v. eBay*, No. CV 11-04585 EJD,
2013 WL 2384250 (N.D. Cal. May 30, 2013) ................................................. 15

*O'Shea v. Littleton*,
414 U.S. 488 (1974) ........................................................................................ 19

*Pardini v. Unilever U.S., Inc.*,
961 F. Supp. 2d 1048 (N.D. Cal. 2013) .......................................................... 16

*Pelletier v. Pac. WebWorks, Inc.*,
No. CIV S-09-3503 KJM, 2012 WL 43281 (E.D. Cal. Jan. 9, 2012) ................. 6

*Plumlee v. Pfizer, Inc.*,
No. 13-CV-00414-LHK, 2014 WL 695024 (N.D. Cal. Feb. 21, 2014) .............. 7

*Repay v. Bank of America, N.A.*,
No. 12 CV 10228, 2013 WL 6224641 (N.D. Ill. Nov. 27, 2013) ....................... 6

*Sanders v. Apple Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) ............................................................ 11

*Schroeder v. United States*,

569 F.3d 956 (9th Cir. 2009) ............................................................................................ 18

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ...................................................................................... 18, 19

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........................................................................................................... 5

*Spreewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ......................................................................................... 4, 5

*TransUnion v. Ramirez*,
141 S. Ct. 2190 (2021) ....................................................................................................... 5

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ........................................................................................................... 5

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .......................................................................................... 16

*Walker v. USAA Casualty Insurance Company*,
474 F.Supp.2d 1168 (E.D. Cal. 2007) .............................................................................. 19

*Warner v. Tinder, Inc.*,
105 F. Supp. 3d 1083 (C.D. Cal. 2015) ....................................................................... 14, 15

*Zeiger v. WellPet LLC*,
304 F. Supp. 3d 837 (N.D. Cal. 2018) .............................................................................. 16

*Zeller v. Optavia, LLC*,
No. 22-CV-434-DMS-MSB, 2022 WL 17858032 (S.D. Cal. Dec. 22, 2022) ................... 17

**State Cases**

*B.D. v. Blizzard Entm't, Inc.*,
76 Cal.App.5th 931 (2022) .......................................................................................... 13, 14

*Bennett v. Hibernia Bank*,
47 Cal. 2d 540, (1956) ........................................................................................................ 7

*Daugherty v. American Honda Motor Co., Inc.*,
144 Cal. App. 4th 824 (2006) ........................................................................................... 11

*Dinosaur Dev., Inc. v. White*,
216 Cal. App. 3d 1310 (Cal. Ct. App. 1989) ..................................................................... 19

*DVD Copy Control Assn., Inc. v. Kaleidescape, Inc.*,
176 Cal.App.4th 697 (2009) .............................................................................................. 13

*Engalla v. Permanente Med. Grp., Inc.*,
15 Cal.4th 951 (1997) ....................................................................................................... 17

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ................................................................................................ 17

*McKell v. Washington Mut., Inc.*,
   142 Cal. App. 4th 1457 (2006) ...................................................................................... 19

*Melchior v. New Line Prods., Inc.*,
   106 Cal. App. 4th 779 (2003) ........................................................................................ 19

*Sellers v. JustAnswer LLC*,
   73 Cal.App.5th 444 (2021) ................................................................................. 12, 13, 14

**Federal Statutes**

15 U.S.C. § 1693m(g) ............................................................................................................. 6

**State Statutes**

Cal. Bus. & Prof. Code §17601(b)(2) ..................................................................................... 9

Cal. Bus. & Prof. Code §17602(a)(1) ..................................................................................... 9

Cal. Bus. & Prof. Code §17602(a)(2) ................................................................................... 10

Cal. Bus. & Prof. Code §17602(a)(3), (c) ............................................................................ 10

Cal. Civ. Code §1783 .............................................................................................................. 7

**Federal Rules**

Fed. R. Civ. P. 8(a)(2) ............................................................................................................ 4

Rule 106 of the Federal Rules of Evidence ........................................................................... 9

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2
3
4

Defendant Mindvalley, LLC ("Mindvalley") respectfully submits this Memorandum of Points and Authorities in support of its concurrently filed Motion to Dismiss the Complaint filed by Plaintiffs Natasha Ali and Amanda Perkins ("Plaintiffs").

5

## I.   INTRODUCTION

6
7
8
9
10
11
12
13
14
15
16
17

At its core, Plaintiffs' Complaint alleges that Mindvalley deceives consumers into paying for its subscription services in violation of California's Automatic Renewal Law ("ARL").  The plausibility of these allegations, and every claim that relies on them, is refuted by the contents of the Complaint. Plaintiffs do not identify any disclosure required by the ARL that Mindvalley failed to make.  Instead, the Complaint references and excerpts portions of the requisite and compliant disclosures contained on Mindvalley's webpages—each displayed online with sufficient clarity and visibility.   Plaintiffs' Complaint must accordingly be dismissed for failure to state a claim under the ARL.  By association, Plaintiffs necessarily fail to state their purported claims arising under the Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), or Electronic Funds Transfer Act ("EFTA"), as those claims are expressly predicated on allegations that Mindvalley violated the ARL.  (*See* Complaint ¶¶ 2, 120, 122.) Because Plaintiffs have not stated viable predicate claims under any of these causes of action, they too must be dismissed.

18
19
20
21
22
23
24
25
26
27
28

Plaintiffs' Complaint is replete with several other defects that require dismissal.  *First*, Plaintiffs' claims under the EFTA, the FAL, and for conversion should be dismissed because they were brought after expiration of the applicable limitations periods.  *Second*, Plaintiffs lack standing to pursue their own claims on an individual basis and the purported class on behalf of persons residing outside of California, and their claims must be dismissed on this additional basis.  *Third*, Plaintiffs' common law fraud, CLRA, FAL and UCL claims, all of which are predicated on allegations of fraud, fail because the Complaint is completely devoid of the heightened particularity required by Rule 9(b).  *Fourth*, Plaintiffs previously agreed to an enforceable and binding class action waiver that bars their pursuit of claims on a classwide basis.  *Fifth*, Plaintiffs' claims for damages preclude them from seeking equitable relief because they do not—and cannot—plead a lack of an adequate remedy at law.  *Finally*, Plaintiffs' unjust enrichment claim should be dismissed because unjust enrichment is not a stand-alone cause of action in California.

1   Accordingly, Mindvalley respectfully requests that the Court dismiss Plaintiffs' Complaint with

2   prejudice.

3   **II.   RELEVANT FACTUAL BACKGROUND**

4   Defendant Mindvalley is a private, global company and personal transformation learning platform

5   that offers online and application-based courses in self-growth, skill mastery, self-care, motivation, and

6   mind and body.  Users can browse Mindvalley programs through its website or downloadable application

7   on the Google Play or Apple App Stores.  Select programs are available at no cost, while others are

8   accessible on an *á la carte* basis or through a paid membership.

9   Plaintiffs' claims in this case relate to this membership feature—more specifically, Plaintiffs'

10   alleged enrollment in Mindvalley's monthly and annual membership subscriptions in 2018 and 2020.

11   (Complaint ¶¶ 15, 19-34, 39, 40, 44, 45.)  The gravamen of Plaintiffs' Complaint is that Mindvalley has

12   violated the ARL because it allegedly failed to: (1) sufficiently display its automatic renewal terms; (2)

13   obtain affirmative consent for such automatic renewals; and (3) provide sufficient acknowledgment of its

14   offer terms and cancellation policy.  (*Id.* ¶ 13.)  Plaintiffs allege that Plaintiff Natasha Ali enrolled in one

15   Mindvalley learning program in 2020 and that after her enrollment, Mindvalley signed her up—without

16   her knowledge or consent—for an automatically renewing subscription and charged her a recurring

17   monthly fee of $150.00.  (*Id.* ¶¶ 24-25.)  Plaintiffs further allege that Plaintiff Amanda Perkins enrolled

18   in Mindvalley services "[i]n or around 2018," and that Ms. Perkins was automatically charged on a

19   monthly basis "every month from 2018 to November 2022."  (*Id.* ¶¶ 18, 28-29.)  **Plaintiffs' core**

20   **allegations are demonstrably false.**

21   Specifically, upon review of its business records, and contradictory to Plaintiffs' allegations,

22   Mindvalley has determined that on February 5, 2020, Ms. Ali made a one-time payment of $249.00 for

23   Mindvalley's "Be Extraordinary" program. (Atallah Decl., Ex. A.)[1]  Ms. Ali was not enrolled in any form

24   of subscription at the time.  (*Id.*)  Over one year later, on April 9, 2021, Ms. Ali purchased an annual,

25   subscription-based membership for $499.00 and accessed the Mindvalley website on over 30 occasions

26   from April 2021 to April 2022 to avail herself of the benefits of that annual membership.  (*Id.* at Exs. B,

27

28   [1] The referenced exhibit is attached, alongside other supporting materials, to the Declaration of John J. Atallah in Support of Motion to Dismiss ("Atallah Decl."), which is also the subject of Mindvalley's Request for Judicial Notice filed concurrently herewith.

C.)   Contrary to the allegations in the Complaint, Ms. Ali was never charged a monthly fee for her subscription.  (*Id.* at Ex. B.)   The annual fee was charged following Ms. Ali's selection of the "Join Membership Yearly" option on the Mindvalley website, which read "pay yearly, cancel anytime."  (*Id.* at Ex. D.)   As reflected in the screenshot at page 26 of Plaintiffs' Complaint, the secure checkout page for the membership contained the plainly legible and conspicuous message: "Billed automatically every year unless you cancel the subscription."  (Compl. ¶ 72.)   In addition to her annual membership, Ms. Ali purchased the add-on "Masterclass" service, "WildFit" on April 9, 2021.  (Atallah Decl., Ex. E.)   This service was provided as a special offering on top of the annual membership for an additional payment of $599.00—and Mindvalley's records indicate that Ms. Ali contacted its customer service department in writing with the specific intent of purchasing the WildFit masterclass at a discounted rate.  (*Id.* at Ex. F.)   On March 25, 2022, Ms. Ali was emailed a 15-day advance warning that her annual membership was scheduled to renew on April 9, 2022 for $499.00.  (*Id.* at Ex. G; Compl. ¶ 90.)   This email plainly disclosed to Ms. Ali that her membership would be renewed on the referenced date ("Your Mindvalley subscription will be auto-renewed for the next year on 04/09/2022.")  (Atallah Decl., at Ex. G.)   Ms. Ali's annual membership was canceled on April 16, 2022 and she was not charged any membership fees for the 2021-2022 renewal period.  (*Id.* at Ex. B.)

Similarly, Mindvalley's business records reflect that Plaintiff Amanda Perkins purchased a $99.00 monthly subscription on August 14, 2022, in connection with her enrollment in the "Silva Ultramind System."  (*Id.* at Ex. C.)   Contrary to her allegations, Ms. Perkins was provided several express disclosures of the automatically renewing nature of her subscription, including on the membership page, checkout page, and in the confirming emails she received following her enrollment in the membership.  Ms. Perkins remitted a total of only three renewal payments thereafter, on September 16, 2022, October 14, 2022, and November 14, 2022.  (*Id.* at H.)   Mindvalley sent Ms. Perkins an email regarding each processed payment and her monthly subscription was successfully canceled on November 26, 2022 without issue.  (*Id.*)

In support of their dubious allegations, Plaintiffs include screenshots from the checkout page on the Mindvalley website that display the very disclosures—clearly, conspicuously, and in visual proximity to the request for consent to the offer—that Plaintiffs allege are absent. (Compl. ¶¶ 72-73.)   The automatic renewal terms of Mindvalley's "Order Summary" box, incorporated directly into the Complaint, are

provided to each consumer *before* they enroll in a Mindvalley subscription. (*Id.*) Similarly, Plaintiffs' Complaint includes an image of Mindvalley's post-checkout acknowledgement, which plainly contains all of the requisite information pursuant to the ARL. (*Id.* ¶¶ 90-91.) The acknowledgment provides consumers with, *inter alia*, the duration of the subscription, the recurring charges to be applied, and a clickable "Cancel Subscription" link in a contrasting color. (*Id.*)

Plaintiffs also attempt to assert claims on behalf of a very broadly and improperly defined putative class of persons who purchased any of Mindvalley's subscription offerings and "incurred unauthorized fees for the renewal of their Mindvalley Subscriptions." (*Id.* ¶ 15.) As set forth below, Plaintiffs cannot pursue their claims on a classwide basis because they lack standing and are further barred from doing so based on the class waiver in the Mindvalley Terms & Conditions.

## III.    LEGAL STANDARD

### A.    Dismissal Under Rule 12(b)(6) for Failure to State a Claim

To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing the pleader is entitled to relief." (Fed. R. Civ. P. 8(a)(2).) To survive a motion to dismiss, the complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).) This "plausibility requirement" requires the allegations in the complaint to "be enough to raise a right to relief above the speculative level." (*Twombly*, 550 U.S. at 555.) The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (*Iqbal*, 556 U.S. at 678.) Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." (*Id.* (internal citation omitted).) Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." (*Id.* at 679.)

Generally, in evaluating a motion to dismiss for failure to state a claim for relief that is plausible on its face, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." (*Spreewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).) However, the Court is not "required to accept as true allegations that are merely conclusory, unwarranted

NOTICE OF MOTION AND MOTION TO DISMISS TO PLAINTIFFS' COMPLAINT
-4-
Case No. 3:22-cv-08578-SI

1    deductions of fact, or unreasonable inferences." (*Id.*; *see also Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d
2    677, 683 (9th Cir. 2009) (courts "need not accept Plaintiffs' unwarranted conclusion in reviewing a motion
3    to dismiss"); *Iqbal*, 556 U.S. at 678-679 (modern pleading standard "does not unlock the doors of
4    discovery for a plaintiff armed with nothing more than conclusions.").)  Similarly, the Court is not required
5    to accept as true allegations that are so plainly contradicted by reality as to render them implausible. (*In*
6    *re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (the court need not accept as true
7    "allegations that contradict matters properly subject to judicial notice."); *10E, LLC v. Travelers Indem.*
8    *Co. of Connecticut*, 500 F. Supp. 3d 1070, 1074 (C.D. Cal. 2020) (dismissing complaint where the
9    plaintiff's claims were "implausible and contradicted in the [complaint] itself.").)

10       **B.    Dismissal Under Rule 12(b)(1) for Lack of Standing**

11       "To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other
12   things, that they suffered a concrete harm.  No concrete harm, no standing." (*TransUnion v. Ramirez*, 141
13   S. Ct. 2190, 2200 (2021).)    Article III limits the jurisdiction of federal courts to "cases" and
14   "controversies" for which a plaintiff has standing to pursue his or her claims. (*Lujan v. Defenders of*
15   *Wildlife*, 504 U.S. 555, 560 (1992).)  To establish standing, a plaintiff must first have suffered an "injury
16   in fact" which is "concrete and particularized" as well as "actual or imminent, not conjectural or
17   hypothetical." (*Id.* (citations omitted).)  Second, the injury must be "fairly traceable to the challenged
18   action of the defendant . . . ." (*Id.* (citations and alterations omitted).)  Finally, it must be "likely" that the
19   "injury will be redressed by a favorable decision." (*Id.* (citations omitted).)  The plaintiff has the burden
20   to establish these elements. (*Id.*)    Further, "[a] plaintiff must demonstrate constitutional standing
21   separately for each form of relief requested." (*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th
22   Cir. 2018) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 185
23   (2000)).)  As the Supreme Court recently observed, a "plaintiff's injury in fact" must be "concrete—that
24   is, real, and not abstract." (*TransUnion* 141 S. Ct. at 2204 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330,
25   340 (2016)).)  "Every class member must have Article III standing in order to recover individual damages.
26   Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or
27   not." (*Id.* at 2208 (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016)).)

28

## IV.  ARGUMENT

### A.  Plaintiffs' EFTA, FAL, and Conversion Claims Are Time-Barred by the Applicable Statutes Of Limitations

Taking the Complaint at face value, Plaintiffs' claim under the EFTA is barred because they initiated this case after the expiration of the one-year limitations period.  Moreover, Ms. Perkins' claims for false advertising and conversion are barred by the applicable three-year statute of limitations.

#### 1.  Plaintiffs' Claims Exceed the EFTA's One-Year Statute of Limitations

A claim under the EFTA must be filed "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1693m(g).  Here, Plaintiffs allege transactions beginning in the years 2018 and 2020. (Compl. ¶¶ 17-18.)  Their Complaint was filed on December 13, 2022.  Plaintiffs further allege that they were each charged their first automatically renewing payment one month after enrolling in Mindvalley's subscription service.  (*Id.* ¶¶ 24, 28.)  These would constitute the first of the alleged "preauthorized electronic fund transfers" that comprise Plaintiffs' EFTA claims.  (*Id.* ¶¶ 107-08.)

Courts have held that the first recurring transfer not only triggers the one-year limitations period as to that transfer, but it also triggers the limitations period for all ensuing transfers.  (*See Camacho v. JPMorgan Chase Bank*, No. 5:14-CV-04048-EJD, 2015 WL 5262022 (N.D. Cal. Sept. 9, 2015) and *Pelletier v. Pac. WebWorks, Inc.*, No. CIV S-09-3503 KJM, 2012 WL 43281 (E.D. Cal. Jan. 9, 2012)).  "There is no applicable 'continuing violation' doctrine to save the claim from the time bar of EFTA if the first recurring transfer falls outside the limitations period, even if there are later transfers which do fall within the period." (*Harvey v. Google Inc.*, No. 15-CV-03590-EMC, 2015 WL 9268125, at *3 (N.D. Cal. Dec. 21, 2015).)  Put differently, the EFTA does not treat several subsequent transfers as a failure to obtain separate written authorizations for each transfer, *i.e.*, as a series of violations.  Rather, a failure to obtain written authorization for the entire series of transfers is deemed a single violation of the EFTA because "the harm occurs once the series of transfers is initiated by the first transfer." (*Repay v. Bank of America, N.A.*, No. 12 CV 10228, 2013 WL 6224641, at *15 (N.D. Ill. Nov. 27, 2013).)

Plaintiffs here allege that Mindvalley failed to obtain written authorization at the times they first transacted in 2018 and 2020, and that automatic transfers began one month thereafter. (Compl. ¶¶ 17-18, 24, 28, 111.)  Although Plaintiffs fail to specify the precise dates of these transactions, their claims are

1   nevertheless barred by the EFTA's one-year statute of limitations, even under the most liberal

2   construction. According to the facts alleged, the first recurring transfer for Ms. Ali began, at the latest, on

3   January 6, 2021 (with the same for Ms. Perkins beginning at least two years earlier). (*Id.*) These dates

4   began the one-year clock notwithstanding any subsequent transfers. Both Plaintiffs' claims under the

5   EFTA are accordingly time-barred and dismissal with prejudice is proper in each instance.

6       **2.    Ms. Perkins' Claims Exceed the Three-Year Statute of Limitations under the**

7           **FAL and for Conversion**

8       Likewise, Ms. Perkins' claims for false advertising and conversion are subject to a three-year

9   statute of limitations under Cal. Civ. Code sections 1783 and 338(a) and (c). A cause of action under the

10  FAL "accrues when a defendant misrepresents or omits material information regarding a product or

11  service and a consumer makes a purchase as a result of such deceptive practices." (*Plumlee v. Pfizer, Inc.*,

12  No. 13-CV-00414-LHK, 2014 WL 695024, at *7 (N.D. Cal. Feb. 21, 2014).) The Complaint alleges that

13  at the time Ms. Perkins enrolled in Mindvalley's services in 2018, Mindvalley "did not disclose to Ms.

14  Ali or Ms. Perkins all required automatic renewal offer terms associated with the subscription or obtain

15  Ms. Ali's and Ms. Perkins' affirmative consent to those terms." (Comp. ¶¶ 18, 21.) Ms. Perkins' FAL

16  cause of action thus accrued at the time of the alleged 2018 omission, but the Complaint was not filed

17  until December 13, 2022. Her claim under the FAL is barred by the statute of limitations and should be

18  dismissed with prejudice.

19      Ms. Perkins' claim for conversion is also time-barred based on her allegations in the Complaint.

20  "Ordinarily the statute of limitations applying in conversion actions begins to run from the date of the

21  conversion even though the injured person is ignorant of his rights." (*Bennett v. Hibernia Bank*, 47 Cal.

22  2d 540, 561, (1956) (citations omitted).) "This rule, however, is not absolute; for example, where there

23  has been a fraudulent concealment of the facts the statute of limitations does not commence to run until

24  the aggrieved party discovers or ought to have discovered the existence of the cause of action for

25  conversion." (*Id.*) Here, the Complaint alleges that the first automatically renewing payment began one

26  month after Ms. Perkins enrolled in Mindvalley services in 2018. (Compl. ¶¶ 17-18, 24, 28, 111.) Her

27  claim for conversion therefore accrued, at the latest, within days of the first recurring transfer. Ms. Perkins

28  knew or had constructive notice of the transfer the same day or shortly thereafter, as it would have

NOTICE OF MOTION AND MOTION TO DISMISS TO PLAINTIFFS' COMPLAINT
Case No. 3:22-cv-08578-SI

generated a notice of withdrawal from her bank.  Even without an affirmative bank or credit card notification, Ms. Perkins reasonably should have known of the transfer from reviewing her statement and/or spending activity.  Her claim for conversion therefore accrued in early 2019 at the latest, placing it outside of the three-year limitations period.  Ms. Perkins' conversion claim should likewise be dismissed with prejudice.

**B.    The Complaint Fails To State A Claim Pursuant To Rule 12(b)(6)**

As set forth above, Plaintiffs' core allegations are plainly contradicted by the contents of the Complaint and judicially noticeable facts.  Ms. Ali and Ms. Perkins both received numerous disclosures regarding the automatically renewing nature of the services for which they signed up, they affirmatively consented to the automatic renewal of their respective memberships, and they used those memberships until they were terminated without issue.  Even if taken at face value, their claims necessarily fail because the allegations in the Complaint include screenshots that reflect the necessary disclosures and support the conclusion that Plaintiffs cannot plausibly plead the critical lack of notice and consent.

**1.    Plaintiffs' UCL, FAL, CLRA, and EFTA Claims Fail as a Matter of Law Because Plaintiffs Cannot Adequately State a Violation of the ARL**

Plaintiffs' claims under the ARL fail because the facts alleged do not plausibly establish an automatic renewal violation.  Plaintiffs' allegation that Mindvalley did not disclose the automatic renewal terms is belied by the Checkout Page and Plaintiffs' own admissions in the Complaint.  Plaintiffs' ARL claims hinge on three central allegations: that Mindvalley (1) failed to "present the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer before the subscription or purchasing agreement is fulfilled;" (2) charged "consumers' Payment Method without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms;" and (3) failed "to provide an acknowledgement that includes the automatic renewal offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the customer . . . ."  (Compl. ¶ 13.)  These can be characterized as the alleged "disclosure," "affirmative consent," and "acknowledgement" violations.  Each, addressed in turn below, falls short of Rule 12(b)(6)'s "facial plausibility" standard and should be dismissed.

Plaintiffs do not—and cannot—identify any disclosure required by the ARL that Mindvalley failed

1   to make.  As Plaintiffs admit, consumers enrolling in Mindvalley services are brought to a Checkout Page

2   that provides the disclosure "Mindvalley Membership [Monthly] [Annual] Subscription USD [$99

3   monthly] [$499 annually] (excluding VAT for EU).  Billed automatically every [month] [year] unless you

4   cancel the subscription."  (*Id.* ¶¶ 72, 76.)  Yet, contrary to Plaintiffs' claims, the disclosure is clear,

5   conspicuous, and in visual proximity to the request, all in clear conformance with the ARL.  (*See* Cal.

6   Bus. & Prof. Code §17602(a)(1).)  Indeed, the disclosure is "[i]n contrasting type . . . to the surrounding

7   text of the same size" ***and*** "[s]et off from the surrounding text of the same size by symbols or other marks

8   in a manner that clearly calls attention to the language."  (*Id.*)  It is enclosed in a separate box calling

9   attention to the notice.  And, as the Ninth Circuit has observed, the law requires "'visual *proximity*,' not

10   immediate *adjacency*," which here is easily met.  (*Hall v. Time, Inc.*, 857 Fed. App'x 385, 386 (9th Cir.

11   2021) (emphasis in original) (finding seller's disclosures provided the required terms).)

12       What is more, the Checkout Page incorporated by screen capture in the Complaint provides

13   additional detail outside of the first, already compliant disclosure.  (*See* Compl. ¶ 72.)  Curiously, Plaintiffs

14   crop their screenshot image to exclude what lies immediately beneath: a link to Mindvalley's customer

15   support center and a box articulating the refund/cancellation policy.  (Atallah Decl. Ex. I.)[2]  The support

16   center provides users with immediate access to refund and payment information, while the

17   refund/cancellation policy (written in larger, all-capital letters) states Mindvalley's 15-day full refund

18   policy.  Plaintiffs make no mention whatsoever of this disclosure in the text of their Complaint.[3]  Taken

19   together, these disclosures satisfy the ARL's "clear and conspicuous" and "visual proximity" requirements

20   and set forth all enumerated information, stating: (1) that the subscription will continue until the consumer

21

22   [2] The Complaint references, relies on, and quotes Mindvalley's Terms & Conditions and Checkout Page

23   disclosures, which together form the basis of Plaintiffs' allegations regarding Mindvalley's supposed
    misrepresentations and omissions.  However, Plaintiffs have failed to disclose the entirety of the Terms

24   & Conditions, which contain Mindvalley's Class Waiver, and have cropped out relevant portions of the
    Checkout Page.  Mindvalley accordingly submits herewith a Request for Judicial Notice regarding these

25   documents pursuant to the doctrine of incorporation by reference and the evidentiary doctrine of
    completeness under Rule 106 of the Federal Rules of Evidence.

26   [3] To the contrary, Plaintiffs allege a failure to "present a complete 'description of the cancellation policy

27   that applies to the offer.'"  (Compl. ¶ 76 (citing Cal. Bus. & Prof. Code §17601(b)(2)).)  Plaintiffs insert
    the word "complete" to their allegation, which is notably absent from the statute itself.  Mindvalley was

28   required only to include a "description of the cancellation policy that applies to the offer," which it
    plainly provided in the portion of the Checkout Page Plaintiffs omit from their screenshot image.  (*See*
    Cal. Bus. & Prof. Code §17601(b)(2).)

NOTICE OF MOTION AND MOTION TO DISMISS TO PLAINTIFFS' COMPLAINT
-9-
Case No. 3:22-cv-08578-SI

cancels ("unless you cancel") (Compl. ¶ 72); (2) the description of the cancellation policy that applies to the offer ("15 Days For A Full Refund") (Atallah Decl., Ex. I); (3) the recurring charges that will be charged to the consumer's credit or debit card ("$99 monthly" or "$499 annually") (Compl. ¶ 72); and (4) the length of the automatic renewal term or that the service is continuous ("every month unless you cancel") (*id.*). (*See* Cal. Bus. & Prof. Code §17602(a)(2).)

Plaintiffs' "affirmative consent" argument suffers a similar fate.  In *Hall*, the Ninth Circuit deemed the ARL's affirmative consent requirement satisfied when the consumer clicked a "Submit Order" button indicating agreement to the automatic renewal offer at the end of an enrollment process that contains the required disclosures.  (*Hall*, 857 Fed. App'x at 386-87.)  Here, users must click a "Complete My Order" button before enrolling in Mindvalley's subscription membership.  (Compl. ¶ 72.)  For the reasons stated above, the disclosures on that webpage are compliant with the ARL.  Therefore, just as the consumers in *Hall*, Mindvalley customers affirmatively consent to the automatic renewal offer by clicking the "Complete My Order" button.

Plaintiffs' "acknowledgement" argument cannot save their claims.  The ARL requires businesses to send consumers an acknowledgement containing certain information regarding the automatic renewal transaction.  It must be in a form that can be retained by the consumer and must include: the automatic renewal offer's terms, the cancellation policy, and a description of how to cancel.  (Cal. Bus. & Prof. Code §17602(a)(3), (c).)  Here, Plaintiffs readily admit that Mindvalley sent Plaintiffs the requisite email, which is capable of retention.  (Compl. ¶ 90.)  They dispute, however, that it includes the necessary disclosures. (*Id.*)  Despite Plaintiffs' conclusory allegations, the email contains the automatic renewal offer's terms ("8-Days Free Trail (thereafter USD 499.00 billed annually)," "Next Billing Date: 4 Dec 2022") (*id.*), the cancellation policy (a purple hyperlink reading "Cancel Subscription" that directs users to a page describing the cancellation policy where they can cancel their subscription) (*id.*), and a description of how to cancel (same, and "If your subscription was purchased on Google's Play Store or Apple's iTunes, please cancel your subscription from your mobile device") (*id.*).  Each of Plaintiffs' claims under the ARL therefore fails to plausibly allege facts in support of Plaintiffs' bare conclusions.

Because Plaintiffs base their UCL, FAL, CLRA, and EFTA claims on allegations that Mindvalley violated the ARL, those claims must also be dismissed for failure to state a plausible predicate claim under

any of those causes of action.  (*Hodges v. Apple Inc.*, No. 13-cv-01128-WHO, 2013 WL 4393545, at \*6 (N.D. Cal. Aug. 12, 2013) ("Because Hodges fails to plead with particularity how Apple violated any statute, he also fails to adequately plead a violation under the UCL's 'unlawful' prong"); *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 837 (2006) (dismissing UCL claim for lack of a violation of statute or other law).)

### C.   Plaintiffs Are Bound by the Class Waiver in Defendant's Terms & Conditions

Through their transactions with Mindvalley, Plaintiffs agreed to the company's Terms & Conditions, which included waivers of Plaintiffs' ability to bring claims on a class basis (the "Class Waiver").  At the time Plaintiff Natasha Ali first transacted with Mindvalley, the following language appeared in Mindvalley's Terms & Conditions:

> **Class Action Waiver.** You may only resolve disputes with us on an individual basis, and may not bring a claim as a plaintiff or a class member in a class, consolidated, or representative action.  Class arbitrations, class actions, private attorney general actions, and consolidation with other arbitrations aren't allowed.  The arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a class or representative proceeding or claims (such as a class action, consolidated action or private attorney general action) unless all relevant parties specifically agree to do so following initiation of the arbitration.

(Atallah Decl. Ex. J.)  The Class Waiver was revised slightly on August 16, 2021, and appeared as follows at the time Plaintiff Amanda Perkins first transacted with Mindvalley:

> **Class Action Waiver.** You acknowledge and agree that You may only resolve disputes with us on an individual basis and may not bring a claim as a plaintiff or a class member in a class, consolidated, or representative action.  Class arbitrations, class actions, private attorney general actions, and consolidation with other arbitrations aren't allowed.  The arbitrator may not consolidate more than one person's claims and may not otherwise preside over any form of a class or representative proceeding or claims (such as a class action, consolidated action or private attorney general action) unless all relevant parties specifically agree to do so following initiation of the arbitration.

(*Id.* at Ex. K.)

Courts may properly determine at the Rule 12 stage that a class action cannot be maintained on the facts alleged.  (*Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009).)  Mindvalley thus moves to dismiss Plaintiffs' class claims as a matter of law under Rule 12(b)(6), or, in the alternative, to strike Plaintiffs' class allegations under Rule 12(f) on the grounds that they are barred by the applicable

terms of service to which Plaintiffs agreed.

It cannot be disputed that Mindvalley's Terms & Conditions were presented to users, including Plaintiffs, when they enrolled in Mindvalley's service.  Specifically, immediately beneath the "Complete My Order" button on Mindvalley's Checkout Page reads the message "By placing your order, you agree to Mindvalley's privacy policy and terms of use."  (Compl. ¶ 72.)  The policy and terms are each underlined and hyperlinked for users to readily click and read before completing their order.  (*Id.*)  By clicking the "terms of use" link, users are directed to the operative version of Mindvalley's Terms & Conditions, which directs users to read the terms carefully before using Mindvalley's website and states that the use of the website constitutes an acknowledgment and acceptance of the terms.  The terms include in large, bold font the heading "**Class Action Waiver**" and the corresponding class waiver language excerpted above.

Plaintiffs assented to the Class Waiver on three separate occasions: (1) when they began using Mindvalley's website; (2) when they originally created a Mindvalley account (which requires a user's agreement to the same terms of service and privacy policy); and (3) when they entered their billing information and clicked "Complete My Order" for the purchase of a Mindvalley membership.  Plaintiffs therefore had notice of the Class Waiver and are bound by its terms.  Moreover, as set forth below, the provision was sufficiently conspicuous and is thus enforceable, rendering this action unfit for class treatment and dismissible as a matter of law.

### 1. Mindvalley Provided Sufficiently Conspicuous Notice of the Class Waiver

Mindvalley provided sufficiently conspicuous notice of the Class Waiver so as to bind Plaintiffs under *Sellers v. JustAnswer LLC*, 73 Cal.App.5th 444 (2021).  According to *Sellers*, the provider of an internet contract must present its contractual terms "to the consumer in a manner that made it apparent the consumer was assenting to those very terms when checking a box or clicking on a button."  (*Id.* at 461.)  In so holding, *Sellers* distinguished between the varying types of internet contracts, including so-called "clickwrap," "browsewrap," and "sign-in wrap" agreements.  (*See id.* at 463-64.)  Where a "clickwrap" agreement requires users to accept a website's terms by clicking a button (with a link to the agreement readily available), and a "browsewrap" is one in which users accept a website's terms merely by scrolling the site, a "sign-in wrap" is a hybrid in which users enroll in an internet product or service and the

enrollment screen states that acceptance of a separate agreement is required to use the service.  (*Id.*)  For "sign-in wrap" agreements, a link to the separate agreement is provided but users are not required to indicate that they have read the agreement's terms prior to enrollment.  (*Id.*)

Mindvalley's Class Waiver constitutes a sign-in wrap agreement.  It includes a textual notice indicating that the user will be bound by the terms, but does not require the consumer to review those terms or to expressly manifest their assent to those terms.  (*See* Compl. ¶ 72.)  "Instead, the user is purportedly bound by clicking *some other* button that they would otherwise need to click to continue with their transaction or their use of the website[.]"  (*B.D. v. Blizzard Entm't, Inc.*, 76 Cal.App.5th 931, 946 (2022) (emphasis in original).)  Thus, "the consumer's assent is largely passive, and the existence of a contract turns on whether a reasonably prudent offeree would be on inquiry notice of the terms at issue." (*Id.* (alterations and internal citations omitted).)  *Sellers* ultimately held that for inquiry notice to be sufficient, the statutory requirements of the ARL must be considered as part of the overall transactional context.  (*Sellers*, 73 Cal.App.5th at 480.)

Here, Mindvalley's agreement provides sufficiently conspicuous notice in consideration of the ARL.  It requires an affirmative click by consumers like Plaintiffs signing up for an ongoing account.  (*See* Compl. ¶ 21.)  It is thus "reasonable to expect that the typical consumer in that type of transaction contemplates entering into a continuing, forward-looking relationship governed by the terms and conditions."  (*B.D.*, 76 Cal.App.5th at 951 (finding "no trouble concluding" that the defendant's agreement provided sufficiently conspicuous notice that a user who clicked a "continue" button at the bottom of a pop-up would be bound by its terms) (alterations and citation omitted).)  The notice in *B.D.* was also a sign-in wrap agreement and included an underlined hyperlink to the defendant's dispute resolution policy just as Mindvalley does for its Terms & Conditions.  (*Id.* at 952.)  The *B.D.* court found that this made the terms "easily available" to consumers and that the "clear and unequivocal reference to the extrinsic document and the contemporaneous availability of its terms shows that, at the time of contracting, the parties consented to those terms."  (*Id.* at 953 (citing *DVD Copy Control Assn., Inc. v. Kaleidescape, Inc.*, 176 Cal.App.4th 697, 714 (2009)).)  In distinguishing from *Sellers*, which found notice insufficient because it required users to "ferret out hyperlinks to terms and conditions," *B.D.* noted that defendant's policy was only "one click away" as opposed to the two clicks in *Sellers*.  (*Id.* at 953.)

Importantly, Mindvalley's notice need only *consider* the ARL and "is not subject to the ARL's specific criteria." (*Id.* at 954 (citing *Sellers*, 73 Cal.App.5th at 479).) This standard is plainly met. As in *B.D.*, Mindvalley's notice was not "extremely small print, lacking contrast, or outside the area where the consumer's attention would necessarily be focused." (*Id.* (alterations and citation omitted).) To the contrary, it was immediately below the webpage's call to action, was set off by underlined text, and provided the unmistakable warning to consumers that "[b]y placing your order, you agree to Mindvalley's privacy policy and terms of use." (Compl. ¶ 72.) From this notice, users could make one click to read Mindvalley's Terms & Conditions, which boldly displayed the heading "**Class Action Waiver**" with the applicable policy. The notice of class waiver is sufficiently conspicuous and thereby enforceable. As such, Mindvalley's Class Waiver forecloses Plaintiffs' class claims.

### D.   Plaintiffs Lack Article III Standing

This Court should dismiss the Complaint for lack of subject matter jurisdiction because Plaintiffs plead no facts to establish constitutional or statutory standing for their alleged claims against Mindvalley.

#### 1.   Plaintiffs Lack Standing to Pursue Their Individual Claims

As set forth above, Plaintiffs' core allegations are demonstrably false and they have suffered no concrete harm in connection with the allegations in the Complaint. Plaintiffs received the necessary disclosures at every stage. (*See* Atallah Decl., Exs. D, G, I, J, and K.) They received the benefit of Mindvalley's services in exchange for their fully informed payment of membership fees and cancelled their memberships without incident. (*Id.* at Exs. C, E, F, H, and L.) Moreover, Mindvalley never charged Ms. Ali any membership fees for her second year of membership (*i.e.*, the first automatic renewal). Therefore, Plaintiffs cannot plausibly allege that they suffered any harm as a result of Mindvalley's conduct, nor that a favorable decision is likely to redress an injury they have suffered—because there is none. *See Lujan*, 504 U.S. at 560.

#### 2.   Plaintiffs Lack Standing to Pursue Claims on Behalf of Consumers Residing Outside of California

Plaintiffs are barred from asserting any injury under the ARL, UCL, FAL, and CLRA on behalf of consumers residing outside of California. In *Warner v. Tinder Inc.*, the United States District Court for the Central District of California held that the ARL is limited to California consumers only. (105 F. Supp.

3d 1083, 1097 (C.D. Cal. 2015).)  Significant to the court was the purpose behind the statue: "The Legislature employed specific language in Section 17602 limiting recovery under [the APRS] to California consumers.  The court will not contravene the Legislature's clear intention." (*Id.*)  This District agreed in *Noll v. eBay*, barring a Florida resident from recovering against EBay under the ARL.  (No. CV 11-04585 EJD, 2013 WL 2384250, *6 (N.D. Cal. May 30, 2013) (dismissing the plaintiff's ARL action without leave to amend).)

The same rule extends broadly across claims brought under California consumer protection statutes and the common law.  "California law embodies a presumption against the extraterritorial application of its statutes." (*Churchill Vill., LLC v. GE Co.*, 169 F.Supp.2d 1119, 1126 (N.D. Cal. 2000), *aff'd* 361 F.3d 566 (9th Cir. 2004).)  Such claims brought by non-residents lacking a nexus with California raise "significant due process problems." (*Id.* at 1126-27 (internal quotations omitted).)  In *Koehler v. Litehouse, Inc.*, the Northern District dismissed class action allegations asserted on behalf of a nationwide class, stating "Plaintiff's UCL, FAL, and CLRA claims, purportedly brought as a nationwide class action, would necessarily include purchases outside of California made by non-California residents.  These plaintiffs do not have the requisite contacts with California, and therefore violate the presumption against the extraterritorial application of California laws and raise significant due process issues." (No. CV 12-04055 SI, 2012 WL 6217635, at *7 (N.D. Cal. Dec. 13, 2012).)  Thus, if a plaintiff is not a consumer in the state, they are not afforded the protections of the foregoing statutes.

In contravention of this rule, Plaintiffs here seek to assert California class claims on behalf of non-California consumers, and have based their consumer protection and common law conversion and so-called "unjust enrichment" claims almost exclusively on California law. (*See* Compl. ¶¶ 94, 134.)  They lack standing to assert claims under the laws of states in which they do not reside, and likewise lack standing to assert California claims on behalf of non-California consumers. (*See Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028, 1039 (S.D. Cal. 2020) ("California district courts frequently address the issue of Article III standing at the pleading stage and dismiss claims asserted under the laws of states in which no plaintiff resides or has purchased products."); *Morales v. Unilever U.S., Inc.*, No. 2:13-2213 WBS EFB, 2014 WL 1389613, at *5 (E.D. Cal. Apr. 9, 2014) (named plaintiffs who were only residents of two states and did not purchase defendant's products in any state but their own did "not have standing to assert

a claim under the consumer protection laws of the other states named in the Complaint.") (quoting *Pardini v. Unilever U.S., Inc.*, 961 F. Supp. 2d 1048, 1061 (N.D. Cal. 2013).)

This District routinely strikes nationwide class action allegations not limited to California consumers. (*See, e.g.*, *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 847 (N.D. Cal. 2018) ("without named representatives from any other states, plaintiffs' nationwide class allegations must be DISMISSED"); *Littlehale v. Hain Celestial Grp., Inc.*, No. C 11-6342 PJH, 2012 WL 5458400, at *2 (N.D. Cal. July 2, 2012) (dismissing plaintiff's UCL and CLRA claims where alleged transactions occurred in Pennsylvania).) Plaintiffs here cannot assert nationwide class action claims on behalf of non-California consumers. Should the Court not strike or dismiss Plaintiffs' class allegations altogether pursuant to the binding Class Waiver, the Court should strike all non-California class allegations as to the Nationwide Class.

### E.    Plaintiffs' UCL, CLRA, FAL, and Common Law Claims Fail Under Rule 9(b)

Plaintiffs attempt to manufacture misrepresentation claims based on disclosures they allege were omitted from Mindvalley's website—disclosures that are plainly present in the screenshots contained in Plaintiffs' own Complaint. (Compl. ¶¶ 21, 72.) In addition to being factually inaccurate, Plaintiffs' attempt, however, also falls short of the Rule 9(b) heightened pleading requirements that apply to claims under the CLRA, FAL, and UCL when those claims are grounded in fraud.[4] (*See, e.g.*, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (rejecting plaintiff's argument that Rule 9(b) does not apply to claims under California's consumer protection statutes grounded in fraud); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003) (rejecting UCL plaintiff's argument that he was not required to state his claim with particularity under Federal Rule 9(b) where UCL claim was "grounded in fraud").)

To satisfy the heightened pleading requirements of Rule 9(b), a plaintiff must describe the "who, what, where, when and how" of the defendant's alleged misrepresentations. (*Meridian Project Sys., Inc.*

---

[4] Undoubtedly, the allegations in the Complaint establish that Plaintiffs' claims under the CLRA, UCL, and FAL sound in fraud. *See, e.g.*, Compl. ¶¶ 118, 119 (charging Mindvalley with violating the "fraudulent prong" of the UCL because Defendant made "false and misleading statements"); *id.* ¶ 36 (asserting that Mindvalley "engaged in [conversion] knowingly, willfully, and with oppression, fraud, and/or malice"); *id.* ¶ 142 (alleging that Defendant's "representations and omissions on the Checkout Page constitute false and deceptive advertisements") *id.* ¶ 144 (asserting that Mindvalley made "false and deceptive advertisements" on its website.)

1    *v. Hardin Const. Co., LLC*, 404 F. Supp. 2d 1214, 1225 (E.D. Cal. 2005) (dismissing plaintiff's UCL

2    claim where plaintiff failed to plead the claim with requisite particularity because plaintiff did not

3    "describe the who, what, where, when and how" of the alleged misrepresentations.)) "[M]ere conclusory

4    allegations of fraud are insufficient." (*Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir.

5    1989).) Moreover, for UCL, FAL, and CLRA claims subject to the 9(b) heightened pleading standards, a

6    plaintiff must actually be exposed to the alleged misleading statements, must have relied on the alleged

7    misleading statements, and must have suffered injury as a result. (*See In re Tobacco II Cases*, 46 Cal. 4th

8    298, 303 (2009) (holding that named plaintiff must plead actual reliance to have standing under UCL).)

9     Rule 9(b) requires a complaint in an action based on misrepresentation to allege ***all*** the substantive

10   elements of the fraud. "The elements of a cause of action for fraud in California are: "(a) misrepresentation

11   (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to

12   defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." (*Kearns v. Ford Motor

13   Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (quoting *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal.4th 951,

14   974 (1997)).) California district courts have held ARL actions to Rule 9(b)'s heightened pleading

15   requirements, finding that such claims sounded in fraud. (*Zeller v. Optavia, LLC*, No. 22-CV-434-DMS-

16   MSB, 2022 WL 17858032, at *12 (S.D. Cal. Dec. 22, 2022).) Consequently, Plaintiffs' misrepresentation-

17   based claims must satisfy these elements.

18     They have failed to do so. Plaintiffs only offer cursory allegations that Mindvalley "knowingly

19   and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein." (Compl. ¶

20   42.) But Plaintiffs offer no specific allegations supporting these legal conclusions. The Complaint's fraud

21   allegations describe generally the ways in which Mindvalley's disclosures were allegedly deficient, but

22   do not provide adequate details about the deception they allege. (*Id.* ¶¶ 73, 79, 87, 91, 148.) Despite

23   casual allusions to deception, Plaintiffs do not allege any specific details about the nature of the "false and

24   deceptive advertisements" that resulted in the alleged deception. (*Id.* ¶ 142; *see Zeller*, 2022 WL

25   17858032, at *12.)

26     Critically, even if Plaintiffs' conclusory allegations concerning misrepresentation were sufficiently

27   detailed to satisfy the first element of Rule 9(b) (they are not), Plaintiffs fall well short of the "scienter"

28   and "intent" elements of the Rule. Plaintiffs' allegations of the requisite states of mind again equate to

1   the mere recital of magic words: "Defendant [] has knowingly and willfully aided, abetted, or conspired

2   in the false and deceptive conduct alleged herein" (Compl. ¶ 42), "Defendant engaged in this conduct

3   knowingly, willfully, and with oppression, fraud, and/or malice . . ." (*Id.* ¶ 136).  Simply calling conduct

4   "deceptive" or alleging that Mindvalley "willfully" failed to comply with the ARL, without additional

5   specificity, does not satisfy Rule 9(b).  For the foregoing reasons, Plaintiffs' fraud-based claims should be

6   dismissed without leave to amend.

### F.      Plaintiffs Cannot Recover In Equity

8           Federal common law bars any claim for equitable relief if there exists an adequate legal remedy.

9   *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *see also*

10  *IntegrityMessageBoards.com v. Facebook, Inc.*, No. 18-CV-05286-PJH, 2020 WL 6544411, at *5 (N.D.

11  Cal. Nov. 6, 2020) (dismissing plaintiffs' claims for injunctive relief where plaintiffs had not pleaded that

12  there was no adequate legal remedy).  Therefore, a party seeking equitable remedies—including injunctive

13  relief—under the UCL, FAL, and CLRA in a diversity action in federal court must first show that legal

14  remedies are unavailable or inadequate: "Guided by that instruction, we hold that the traditional principles

15  governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply

16  when a party requests restitution under the UCL and CLRA in a diversity action."  *Id.*; *see also*

17  *IntegrityMessageBoards.com*, 2020 WL 6544411, at *5 ("The court disagrees with plaintiff's attempt to

18  cabin the subject requirement to equitable claims for non-injunctive relief . . . the Supreme Court in *York*

19  did not draw any distinction among the various forms of equitable relief when requiring the absence of a

20  "plain, adequate, and complete remedy at law" to obtain it.");  *Mort v. United States*, 86 F.3d 890, 892

21  (9th Cir. 1996) ("It is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when

22  the moving party has an adequate remedy at law."  (quoting *Morales v. Trans World Airlines, Inc.*, 504

23  U.S. 374, 381 (1992)); *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009) (No "equitable

24  relief . . . where an adequate remedy exists at law.").

25          Based on the allegations of the Complaint, Plaintiffs fail to make such a showing.  Critically, the

26  Complaint is devoid of any factual support for the conclusory proposition that Plaintiffs lack an adequate

27  legal remedy and, indeed, requests actual damages (*e.g.*, monetary damages, including but not limited to

28  any compensatory, statutory, and/or punitive damages).  (Compl. at "Prayer"; *Sonner*, 971 F.3d at 844

NOTICE OF MOTION AND MOTION TO DISMISS TO PLAINTIFFS' COMPLAINT
-18-
Case No. 3:22-cv-08578-SI

(holding that plaintiff failed to establish she lacked an adequate remedy at law under the UCL and CLRA because she did not plead unavailability) (citing *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974) (holding that a complaint seeking equitable relief failed because it did not plead "the basic requisites of the issuance of equitable relief" including "the inadequacy of remedies at law").)  More importantly, Plaintiffs concede that they seek "damages in the amount of the unauthorized debits taken by Mindvalley" and a "refund [in] the amounts that Plaintiff[s] and Class Members overpaid for Defendant's services" (Compl. ¶¶ 113, 150), which is clearly a form of monetary damage that bars the equitable relief also sought here.  As in *Sonner*, Plaintiffs seek the same restoration through equitable restitution, "the full amount of their money or property," as they request in damages to compensate for the same past harm.  (*Id.* ¶ 144.)  And although they make the conclusory assertion that they have "no adequate remedy at law," Plaintiffs fail to explain "how the same amount of money for the exact same harm is inadequate or incomplete."  *Sonner*, 971 F.3d at 844.  Having failed to plausibly allege that they lack an adequate remedy at law, Plaintiffs' requests for equitable remedies under the UCL, and FAL must be dismissed.

### G.  Unjust Enrichment Is Not an Independent Cause of Action

Plaintiffs' fifth cause of action is styled as a claim for "unjust enrichment."  But as the courts have routinely found, "[t]here is ***no cause of*** action in California for unjust enrichment."  *Walker v. USAA Casualty Insurance Company*, 474 F.Supp.2d 1168, 1174 (E.D. Cal. 2007) (emphasis in original) (internal quotation omitted) (quoting *Melchior v. New Line Prods., Inc*., 106 Cal. App. 4th 779, 794 (2003); *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1490 (2006); *Ham v. Hain Celestial Group, Inc.*, 70 F. Supp. 3d 1188, 1191 ("unjust enrichment claim is dismissed because unjust enrichment is not an independent cause of action"); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1031 (N.D. Cal. 2012) (dismissing cause of action for unjust enrichment because "California does not recognize a stand-alone cause of action for unjust enrichment").  Instead, unjust enrichment is a "general principle, underlying various legal doctrines and remedies," rather than a remedy itself.  *Dinosaur Dev., Inc. v. White*, 216 Cal. App. 3d 1310, 1315 (Cal. Ct. App. 1989).  Because California law does not recognize Plaintiffs' claim for unjust enrichment, there are no facts Plaintiffs could allege to support this claim.  Thus, Mindvalley's motion to dismiss should be granted without leave to amend as to Plaintiffs' fifth cause of action.

1

**V.       CONCLUSION**

2

      For the foregoing reasons, Mindvalley respectfully requests that the Court issue an order

3

dismissing Plaintiffs' Complaint in its entirety, with prejudice.

4

5

6

DATED:  February 16, 2023          **FOLEY & LARDNER LLP**
                                   Erik K. Swanholt

7

                                   John J. Atallah
                                   Cole K. Waldhauser

8

9

                                   */s/ John J. Atallah*

10

                                   John J. Atallah
                                   *Attorneys for Defendant*

11

                                   *Mindvalley, LLC*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

PROOF OF SERVICE – Electronic Filing

2

     I HEREBY CERTIFY that on February 16, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the

3

Electronic Service List for this case.

4

5

                         */s/ John J. Atallah*
                         John J. Atallah

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4875-1574-7147.7