John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
401 W Broadway, Suite 1760
San Diego, CA 92101
Tel.: (858) 209-6941
jnelson@milberg.com

*Attorney for Plaintiff and the Putative Classes*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA PERKINS individually and on behalf of all others similarly situated, | CASE NO. 3:22-cv-08578-SI |
| Plaintiffs, | **AMENDED CLASS ACTION COMPLAINT** |
| -vs.- | **JURY TRIAL DEMANDED** |
| MINDVALLEY, LLC, | Judge: Hon. Susan Illston |
| Defendants. | Hearing: April 28, 2023, 10:00 am |
| | Courtroom: via Webinar |

Plaintiff Amanda Perkins ("Plaintiff", and/or "Ms. Perkins") brings this action individually and on behalf of all others similarly situated against Defendant Mindvalley, LLC ("Defendant" or "Mindvalley"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to himself and their counsel, which are based on personal knowledge.

### I.    INTRODUCTION

1.    This is a putative class action lawsuit against Defendant based on its failure to provide the requisite disclosures and authorizations required to be made to and obtained from California consumers under California's Automatic Renewal Law ("CA ARL").

2.      In addition, on a nationwide basis, Defendant has violated the Electronic Funds Transfer Act ("EFTA") by uniformly and routinely initiating preauthorized electronic fund transfers taking money from the bank accounts of Plaintiff and members of the Nationwide EFTA Subclass without obtaining their written authorization for the transfers and routinely failing to provide a copy of any such written authorization to Plaintiff and the Nationwide EFTA Subclass members from whose bank accounts Defendant took preauthorized electronic fund transfers for fees.

3.      Founded in 2013, Mindvalley is a learning experience company that publishes ideas and teachings by the authors in personal growth, wellbeing, spirituality, productivity, mindfulness and more – and combines them with learning technology within engaged and supportive communities.

4.      Through its Website, Defendant markets, advertises, and sells to consumers in California and throughout the United States.

5.       Mindvalley offers a variety of payment plans, from its "free trial" to paying for its subscriptions via a monthly or annual subscription (collectively, the "Subscriptions").

6.      To sign up for one of Defendant's Subscriptions through the Mindvalley's Website, customers must provide Defendant with their billing information and Defendant then automatically charges customers' on monthly or yearly basis.

7.      Plaintiff's allegations include that at the check-out screen customers were misled into believing that they signed up for a free service only to incur a charge.

8.      Defendant is also able to unilaterally charge its customers' renewal fees without their consent, as Defendant is in possession of its customers' billing information.

9.      The Federal Trade Commission (FTC) Act's Section 5 is the primary federal statute that governs the use of ARL provisions. The FTC's guidance on negative option features advises businesses to adhere to five fundamental principles for compliance.  (See Negative Options – A Report by the staff of the FTC's Division of Enforcement attached hereto as Exhibit "1"). The five principles are as follows:

**Principle 1**. Disclose material terms, including existence, total cost, third-party billing terms, and how to cancel payment (See Id. at p.8);

**Principle 2**. Make disclosures visible by placing them in prominent locations (See Exhibit Id. at p.7);

**Principle 3**. Disclose material terms of the offer to consumers before payment (See Id.);

**Principle 4**. Obtain consumers' affirmative consent to the offer rather than relying on a pre-checked box (See Exhibit "1"p.7); and

**Principle 5**. Avoid impeding the effective operation of promised cancellation procedures (See Exhibit "1"p.7).

## CALIFORNIA AUTOMATED RENEWAL LAW

10.    Pursuant to the CA ARL, online retailers who offer automatically renewing subscriptions to California consumers must: (a) obtain affirmative consent prior to the consumer's purchase. It is generally accepted that a checkbox to agree next to the automatic renewal clause may suffice. However, the checkbox should not be "pre-checked" and if the consumer is also agreeing to other terms and conditions of the purchase, that consent should be separate from the automatic renewal consent;; (b) provide the complete auto-renewal terms in a clear and conspicuous manner and in visual proximity to the request for consent prior to the purchase; (c) provide an acknowledgement identifying an easy and efficient mechanism for consumers to cancel their subscriptions; and (d) as of July 1, 2022, if the automatically renewing offer includes an initial term that lasts for one year or longer, then the business must provide notice between 15 days and 45 days before the date of renewal.

11.    Defendant has violated the CA ARL by: (i) failing to present the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer before the subscription or purchasing agreement is fulfilled, in violation of Section 17602(a)(1); (ii) charging consumers' Payment Method without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of Section 17602(a)(2); and (iii) failing to provide an acknowledgment that includes the automatic renewal

offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in direct violation of Sections 17602(a)(3) and 17602(b). Cal. Bus. & Prof. Code §§ 17602(a)(l), (a)(2), (a)(3), (b).

12.     As a result, the access to the programs granted to Plaintiff and the Class under the automatic renewal of continuous service agreements are deemed to be "unconditional gifts" under the ARL. Cal. Bus. & Prof. Code § 17603.

13.     Accordingly, Plaintiff brings this action individually and on behalf of all California purchasers of any of Defendant's Subscription offerings who, within the applicable statute of limitations period up to and including the date of judgment in this action, incurred unauthorized fees for the renewal of their Mindvalley Subscriptions.  Based on Defendant's unlawful conduct, Plaintiff seeks damages, restitution, declaratory relief, injunctive relief, and reasonable attorneys' fees and costs, for: (i) violation of the Electronic Funds Transfer Act, 15 U.S.C. 1693, et seq. (ii) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; (iii) conversion; (iv) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq.; (v) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.; (vi) negligent misrepresentation; and (vii) unjust enrichment.

## II.     THE PARTIES

14.     Plaintiff Amanda Perkins is citizen of California, residing in Los Angeles, California. On or about August 14, 2022, Ms. Perkins signed up for what she thought was one program offered on Defendant's online learning platform while living in California.

15.     At the time of enrollment, Ms. Perkins was not aware that Defendant was going to automatically renew her subscription every month.

16.      During the enrollment process, but before finally consenting to Defendant's subscription offering, Ms. Perkins provided her Payment Method information directly to Defendant.

17.    At the time Ms. Perkins enrolled in Mindvalley's online learning platform, Defendant did not disclose to Ms. Perkins all required automatic renewal offer terms associated with the subscription program or obtain Ms. Perkins' affirmative consent to those terms.

18.    Further, after Ms. Perkins completed her initial order, Defendant sent Ms. Perkins an acknowledgment email that failed to provide Ms. Perkins with the complete automatic renewal terms that applied to Defendant's offer, a description of Defendant's full cancellation policy, or information regarding how to cancel Ms. Perkins' Mindvalley's subscription in a manner capable of being retained by her.

19.    Ms. Perkins did not receive any other acknowledgment that contained the required information.

20.    After Ms. Perkins first signed up for her program, Defendant automatically renewed Ms. Perkins' Subscription and charged her Payment Method the full standard monthly rate of $99.00 per month.

21.    Thereafter, Defendant continued to automatically renew Ms. Perkins' Subscription on a monthly basis, charging her Payment Method every month until November 2022.

22.    Ultimately, Ms. Perkins discovered the unauthorized charges and called Defendant regarding why she was getting charged a monthly subscription that she did not authorize and to request a refund.

23.    However, Defendant denied Ms. Perkins' refund request.

24.    Defendant's inadequate disclosures and refusal to issue a refund are contrary to the ARL, which deems products provided in violation of the statute to be a gift to consumers.  Cal. Bus. & Prof. Code § 17603.

25.    As a direct result of Defendant's violations of the ARL, Ms. Perkins suffered, and continues to suffer, economic injury.

26.    Defendant Mindvalley, LLC ("Mindvalley" or "Defendant") is an eLearning platform founded in 2003.

27.    Mindvalley's principal place of business is located in Kuala Lumpur, Malaysia.

28.     Defendant is a learning experience company that publishes ideas and teachings by the authors in "personal growth, wellbeing, spirituality, productivity, mindfulness and more – and combines them with cutting-edge sophisticated learning technology within engaged and supportive communities."

29.     Defendant also promotes, advertises, and/or markets its automatic renewing subscription plans which provides the end users with access to the online courses.

30.     Defendant sells Subscriptions in California and has done business throughout California and throughout the United States at all times during the Class Period.

31.     Defendant also made automatic renewal or continuous service offers to consumers in California and throughout the United States via the Mindvalley Properties.

32.     Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

### III.     JURISDICTION AND VENUE

33.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiff, as well as most members of the proposed class, is a citizen of a state different from Defendant.

34.     This Court has personal jurisdiction over Defendant.  Defendant does business in California and has sufficient minimum contacts with this state, including within this District, and/or has otherwise intentionally availed itself of the California consumer market through the promotion, marketing, and sale of its products and/or services to residents within this District and throughout California. Additionally, Plaintiff purchased her Mindvalley Subscription from Defendant while in California.

35.    Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

36.    Defendant systematically conducts business in this District and throughout the State of California and it distributed, advertised, and sold its Subscriptions to Plaintiff and Class Members in these States and Districts.

## IV.    GENENERAL FACTUAL ALLEGATIONS

### A.  The History of the Subscription e-Commerce Market

37.    The e-commerce subscription model is a business model in which retailers provide ongoing goods or services "in exchange for regular payments from the customer."[1] Subscription e-commerce services target a wide range of customers and cater to a variety of specific interests. Given the prevalence of online and e-commerce retailers, subscription e-commerce has grown rapidly in popularity in recent years. Indeed, the "subscription economy has grown more than 400% over the last 8.5 years as consumers have demonstrated a growing preference for access to subscription services[.]"[2] Analysts at UBS predict that the subscription economy will expand into a $1.5 trillion market by 2025, up from $650 billion in 2020.[3] That constitutes an average annual growth rate of 18%, which makes the subscription economy "one of the fastest-growing industries globally. [4]

---

[1] See https://www.coredna.com/blogs/ecommerce-subscription-services.
[2] Business Insider, Taco Bell's taco subscription is rolling out nationwide — here's how to get it (January 6, 2022), https://www.businessinsider.com/taco-bell-subscription-launching-across-the-country-2022-1 (internal quotation marks omitted).
[3] See UBS, Investing in digital subscriptions (March 10, 2021), https://www.ubs.com/global/en/wealth-management/our-approach/marketnews/article.1525238.html ("[A]t close to USD 650 billion in 2020, we expect the subscription economy to expand into a USD 1.5 trillion market by 2025, implying an average annual growth rate of 18%."). See also Subscribed, UBS Declares: It's Worth Investing in the Subscription Economy (April 17, 2021), https://www.subscribed.com/read/news-and-editorial/ubs-declares-its-worth-investing-in-the-subscription-economy; Business 2 Community, The Subscription Economy Is Booming Right Now. But Are You Reaping the Full Benefits? (October 7, 2021), https://www.business2community.com/ecommerce/the-subscription-economy-is-booming-right- now-but are-you-reaping-the-full-benefits-02434851.
[4] UBS, Investing in digital subscriptions (Mar. 10, 2021), supra ("[Growth] was seen across many areas, including e-commerce, video streaming, gaming, cloud-based applications, etc."); see also Juniper Research, Subscriptions For Physical Goods To Overtake Digital Subscriptions By 2025; Growing To Over $263bn Globally (Oct. 12, 2020), https://www.juniperresearch.com/press/subscriptions-for-physical-goods-to-overtake (acknowledging "the significant lead the digital sector has had in th[e] area[ of digital service subscriptions]").

Amended Class Action Complaint
3:22-cv-08578

38.    As noted above, the production, sale, and distribution of subscription-based products and services is a booming industry that has exploded in popularity over the past few years. According to Forbes, "[t]he subscription e-commerce market has grown by more than 100% percent a year over the past five years, with the largest retailers generating more than $2.6B in sales in 2016, up from $57.0M in 2011."[5]  Following 2016, market growth within the industry increased exponentially, reaching $650 billion in 2020.[6]  "As such, the financials of companies with subscription business models[] … improved dramatically in 2020 thanks to limited revenue volatility and strong cash flow generation."[7]  Thus, "[t]he share prices of most subscription companies have performed well in recent years."[8]

39.    The expansion of the subscription e-commerce market shows no signs of slowing. "We're now in the subscriptions era, and the pandemic is accelerating its takeover. During the COVID-19 lockdowns, many digital-based subscription business models fared well due to their promise of convenience and strong business continuity."[9]  According to The Washington Post, "[s]ubscriptions boomed during the coronavirus pandemic as Americans largely stuck in shutdown mode flocked to digital entertainment[.] … The subscription economy was on the rise before the pandemic, but its wider and deeper reach in nearly every industry is expected to last, even after the pandemic subsides in the United States."[10]

40.    However, as The Washington Post has noted, there are downsides associated with the subscription-based business model. While the subscription e-commerce market has low barriers and is thus easy to enter, it is considerably more difficult for retailers to dominate the

---

[5] The State Of The Subscription Economy, 2018, Forbes (Mar. 4, 2018), https://www.forbes.com/sites/louiscolumbus/2018/03/04/the-state-of-the-subscription-economy-2018/#6ad8251a53ef.
[6] See UBS, Investing in digital subscriptions (Mar. 10, 2021), available at https://www.ubs.com/global/en/wealth-management/our-approach/marketnews/article.1525238.html.
[7] Id.
[8] Id.
[9] UBS, Investing in digital subscriptions (Mar. 10, 2021), https://www.ubs.com/global/en/wealth-management/our-approach/marketnews/article.1525238.html.
[10] The Washington Post, Everything's becoming a subscription, and the pandemic is partly to blame (June 1, 2021), https://www.washingtonpost.com/business/2021/06/01/subscription-boom-pandemic/ (noting that "e-commerce and entertainment subscriptions to sites such as Netflix, Hulu and Disney Plus made headlines during the pandemic for soaring growth").

market due to the "highly competitive prices and broad similarities among the leading players."[11] In particular, retailers struggle with the fact that "[c]hurn rates are high, [] and consumers quickly cancel services that don't deliver superior end-to-end experiences."[12] Yet, retailers have also recognized that, where the recurring nature of the service, billing practices, or cancellation process is unclear or complicated, "consumers may lose interest but be too harried to take the extra step of canceling their membership[s]."[13] As these companies have realized, "[t]he real money is in the inertia."[14] As a result, "[m]any e-commerce sites work with third-party vendors to implement more manipulative designs."[15] That is, to facilitate consumer inertia, a number of subscription e-commerce companies, including Defendant, "are now taking advantage of subscriptions in order to trick users into signing up for expensive and recurring plans. They do this by intentionally confusing users with their app's design and flow, … and other misleading tactics[,]" such as failure to fully disclose the terms of its automatic-renewal programs. [16]

41.    To make matters worse, once enrolled in the subscription, "[o]ne of the biggest complaints consumers have about brand/retailers is that it's often difficult to discontinue a subscription marketing plan."[17] Moreover, "the rapid growth of subscriptions has created a host of challenges for the economy, far outpacing the government's ability to scrutinize aggressive marketing practices and ensure that consumers are being treated fairly, consumer advocates say."[18]

---

[11] McKinsey & Company, Thinking inside the subscription box: New research on e-commerce consumers, (February 2018), https://www.mckinsey.com/industries/technology-media-and-telecommunications/our-insights/thinking- inside-the-subscription-box-new-research-on-ecommerce-consumers#0.
[12] Id.
[13] Washington Post, Little-box retailing: Subscription services offer new possibilities to consumers, major outlets (April 7, 2014), https://www.washingtonpost.com/business/economy/tktktktk/2014/04/07/f68135b6-a92b-11e3- 8d62-419db477a0e6_story.html.
[14] Id.
[15] Business Insider, A new study from Princeton reveals how shopping websites use 'dark patterns' to trick you into buying things you didn't actually want (June 25, 2019), https://www.businessinsider.com/dark-patterns-online- shopping-princeton-2019-6.
[16] TechCrunch, Sneaky subscriptions are plaguing the App Store (October 15, 2018), https://techcrunch.com/2018/10/15/sneaky-subscriptions-are-plaguing-the-app-store/.
[17] The Washington Post, Everything's becoming a subscription, and the pandemic is partly to blame (June 1, 2021), https://www.washingtonpost.com/business/2021/06/01/subscription-boom-pandemic/ ("'Subscription services are a sneaky wallet drain,' said Angela Myers, 29, of Pittsburgh. 'You keep signing up for things and they make it really hard to cancel.'"); see also New Media and Marketing, The problem with subscription marketing (Mar. 17, 2019), https://www.newmediaandmarketing.com/the-problem-with-subscription-marketing/.
[18] Id.

Thus, although "Federal Trade Commission regulators are looking at ways to make it harder for companies to trap consumers into monthly subscriptions that drain their bank accounts [and] attempting to respond to a proliferation of abuses by some companies over the past few years[,]"[19] widespread utilization of these misleading dark patterns and deliberate omissions persist.

42.    On March 23, 2023, the Federal Trade Commission ("FTC") proposed a "click to cancel" provision requiring sellers to make it as easy for consumers to cancel their enrollment as it was to sign up.[20]

43.    In response to the FTC's new proposal, President Biden tweeted "Too often, companies make it difficult to unsubscribe from a service, wasting Americans' time and money on things they may not want or need.  I support the FTC's proposal requiring companies to fix this. It shouldn't be harder to cancel a service than it was to subscribe for it."[21]

**B. Defendant's Online Complaints are Indicative of its Unlawful Subscription Practices**

44.    Consumers have complained on social media outlets both about Defendant's misleading enrollment process as well as its unclear cancellation process.

45.    For example, as set forth below, there are numerous complaints regarding Defendant's "15 days risk-free" offer.

46.    Also, consumers complained about being misled into believing they were enrolling in a "free trial membership" that could be easily cancelled only to discover that it was very difficult for them to cancel this "free membership" and they ended up getting charged despite their attempts to cancel.

47.    Many users of Mindvalley also believed they were purchasing a one-month or one-year Subscription only to discover that their Subscriptions were being automatically renewed.

---

[19] Id.
[20] https://www.ftc.gov/news-events/news/press-releases/2023/03/federal-trade-commission-proposes-rule-provision-making-it-easier-consumers-click-cancel-recurring.
[21] https://mobile.twitter.com/POTUS/status/1638896377353601028.

48.    Other users were just unable to cancel their monthly or annual Subscriptions fees.

49.    Users also complained when they were finally able to cancel the automatic renewal that their existing Subscription which they already paid for was terminated and they did not receive a refund.

50.    This is despite the fact that Mindvalley claims that "When you cancel a subscription you'll still be able to use your subscription for the time you've already paid."[22]

51.    Below is just a sampling of those reviews from the Trustpilot website[23]:

---

[22] https://faqs.mindvalley.com/en/articles/2553097-how-to-cancel-when-you-purchase-via-apple-or-google-playstore.
[23] https://www.trustpilot.com/review/www.mindvalley.com?sort=recency.



**Linda**
1 review    ◎ FR

⭐ ☆ ☆ ☆ ☆                                                    6 days ago

## NO CUSTOMER SERVICE!!! WASTE OF MONEY

I lost $399 on a course they said would be in my account forever for me to go back to
time and time again. When I finally had the time to devote to it I discovered they had
removed it from my account. I never received a response from Mindvalley and the
course was never put back into my account so I never took the course and lost my
money. A complete waste of $399 (this was in 2017).
Then last year March 2022 my spouse received a link from a friend for a special price
on an annual membership and she asked if I could pay because she did not have a
credit card. I used my credit card but asked that the membership went into her
account and I provided them her name. Instead the membership was put into my
account. We tried to get this matter resolved. Mindvalley says to contact them via
iMessage or Whatsapp...which I did only to find out both platforms only have a BOT
responding. Then I sent an email and never heard a word...just silence. Basically there
is no viable way to reach a human to speak to at Mindvalley. Customer service does
not exist, it just doesn't exist period. You can see in the other reviews here on Trust
Pilot, that ALL the responses by Mindvalley are the same...a BOT wrote the replies to
the complaints. That is how it is...unbelievably frustrating and disappointing. Be
warned...

I feel that the "concept" of Mindvalley is wonderful; however, its founder, Vishen, turns
out to be just another ruthless businessman after peoples money all on the pretense
of spirituality. It's a SCAM. Read the reviews for yourself and on BBB. Mindvalley is
not accredited in the Better Business Bureau. It has a C+ rating and 72 complaints.
Like I said. BE WARNED!!!

**Date of experience:** March 12, 2023

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**MVP**
1 review   ◎ US



★☆☆☆☆   ✔ Verified                                    6 days ago

### Price bait and switch

This company advertises certain prices and when you go to sign up, it does the classic bait and switch and only allows purchase of the most expensive "late registration" price even when you're early. The VIP package comes with a 30 day free subscription trial but when you go to access it, you cannot view any of the actual programs without paying the full annual subscription! Again another bait and lie. There is no customer service to speak of. No phone number to speak to a live person. Only a chat bot which does not answer any of your questions. For a company who is in the business of personal growth assistance and who claims to make millions, I find this to be highly unethical and frankly disappointing.

**Date of experience:** February 24, 2023



**Maryke Lessing**
2 reviews   ◎ ZA



★☆☆☆☆                                                  Feb 8, 2023

### DO NOT GET A MINDVALLEY MEMBERSHIP

If I could give you 0 stars I would!!! I have no way to express my annoyance with Mindvalley. Your programs are no problem, they are indeed brilliant. BUT YOU DON'T GET WHAT CANCELLED MEANS. I have due to necessity cut down on things I have as a luxury or have not used barely. Mindvalley membership is one ( I have used it once this past year). So I cancelled I got an email and an email. Later that evening I get a notification an international payment was declined due to no funds.
Well YES. There is no funds in that account for a very valid reason. 2. I CANCELLED. YOU HAVE BEEN TRYING TO TAKE THIS MONEY NOW FOR 5 DAYS!!!!!! I HAVE COMPLAINED 4 TIMES..... NOT ONE RESPONSE????? SO YOU GLADLY TAKE MONEY BUT CANT GET YOUR ACCOUNTING SYSTEM TO READ A CANCELLATION!!!! SONT EXPECT ANY RECOMMENDATION FROM ME!

**Date of experience:** February 07, 2023

★☆☆☆☆                                                                 Feb 7, 2023

**I am very disappointed in Mindvalley**

I am very disappointed in Mindvalley. I used to love it.... til I had to ask for a refund for
a new year program. I did not understand. The refund was done quickly. Problem
solved, I thought.
A new extension of a subscription I did not know I had was done. My VISA account
was deducted for another amount!
I can only have contact by WhatsApp. First time I was promised to receive a call. Did
not happen. I sent a message on WhatsApp again without success.
I am very disappointed in Mindvalley!

**Date of experience:** February 06, 2023

**DA**    **Darren**
         2 reviews    ◎ US

★☆☆☆☆                                                                 Jan 29, 2023

**Do not give your money to this company**

Do not give your money to this company, or if you do beware. They have a 15-Day
trial period where you pay $399 to sign up for an annual membership. I had reviewed
their material and cancelled on day 13 and they sent me a "your subscription has
been cancelled" email. Then I had been waiting for the charges to be reversed but
they never were. Then about a week later, I contacted Customer Support....get
this...they said, "Well, there's another location on the website you need to go to
cancel your trial subscription." I sent them a copy of the email they sent me and they
said, "I'm sorry, you are beyond the 15-day cancellation period and do the tax reason
and some other BS, we can't refund your money. This company has deceptive sales
practices and is not honorable. I suggest you be careful who you put your money
with.

**Date of experience:** January 28, 2023

1

⭐☆☆☆☆                                                      A day ago

2

**Terrible experience trying to get a...**

3
Terrible experience trying to get a refund. I've been trying for about a week to find a
4
way to cancel my membership. The link you're directed to puts you into a loop so you
can't get a refund. There's no phone number for customers to call so you can't ask
5
for a refund. Help and Support is useless, it puts you into the loop as well.
6
**Date of experience:** November 16, 2022

7



8                  **KH**
                   5 reviews    ⊚ GB
9

⭐☆☆☆☆                                                      4 days ago
10

11      **Terrible experience**

12      Complicated billing, enrolled on the wrong course and staff are only able to offer
        temporary solutions to your problems. There is a major issue with billing which causes
13      you to lose access to what you paid for. Its a terrible experience for the customer

14      **Date of experience:** November 21, 2022

15

16                 

        **Mr Enoch Govada**
17                 2 reviews    ⊚ GB

18      ⭐☆☆☆☆                                                      Dec 18, 2022

19
        **Mindvalley auto renewal of subscription**
20
        Hi this is Enoch and I had purchased a subscription but have not been actively using
21      the training in the last 4-5 weeks and tried to cancel my subscription via App Store
        but it was not available there. I logged into my Mind valley account and cancelled my
22      auto renewal today. I would like to request a refund, for this automated payment
        going out today the 18th Dec 2022.
23
        I would also like to also remove my card details on your website, and there is no
24      option to remove this.

25      I hope you can look into resolving this as soon as possible. Thanks

26      **Date of experience:** December 17, 2022

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Nathalie Nissani**
1 review   ◉ US

★☆☆☆☆                                Dec 13, 2022

**No recommended**

No recommended.
I've seen better plans for a lot less. In every aspect.
Nevertheless- THEY WILL KEEP PULLING MONEY OUT OF YOUR ACCOUNT if you
didn't cancel membership.
It's a year program, apparently they keep charging you without approval.
And NO ONE TO TALK TO in costumer service.
Horrible costumers service.
Below anything I expected for a platform like this.
Below expectations, above price and crooks!

**Date of experience:** December 12, 2022



**Stephanie Dickert**
2 reviews   ◉ US

★☆☆☆☆                                Nov 5, 2022

**DONT DO IT!**

Their customer service is no. Existent. They give you the run around until your time
has expired for refund. I contacted more than 5 times and was told to log on. I was
unable to get logged on and NEVER received email back from their support. Save
yourself money, DONT DO IT!

**Date of experience:** November 04, 2022

**TH**  **Torben Hyldgård**
13 reviews   ◎ US

 Sep 29, 2022

### Spite countless I have tried to get in…

I have countless times, tried to get in touch with Mindvalley - it is impossible, all the time you will just receive a non-replayable email.
I signed up - never used it - never signed in - they continue stealing 99,- USD from my bank account monthly.
It seems to be a scam - Shame on Vishen shame on Mindvalley. You still owe me 299,- USD

Date of experience: September 15, 2022

**CL**  **Claire**
1 review   ◎ GB

★☆☆☆☆ Oct 12, 2022

### I'm having exactly the same problems

I'm having exactly the same problems as other unhappy reviewers, nothing is working, I only wanted to sample one course and then have option to refund. I joined a few days ago, the links don't work for a refund, there is no 'billing' section in profile, the website isn't working so not been able to even look at any courses, never mind the one course I was interested in. I've whatsapped, chatted, and emailed with no other response than we'll get back to you as soon as we can. Mindvalley you need to sort your service out. I've tried multiple devices so it is definitely the site. I've checked several times a day and nothing is working

Date of experience: October 11, 2022

    52.     Below is just a sampling of those reviews from the Complaints Board website[24]:

---

[24] https://www.complaintsboard.com/mindvalley-mindvalley-c1369562.

 **Isabelle Levesque** of US
Feb 15, 2023 | 9:04 am EST

## Refund

On January 6 2023, my subscription was to be automaticaly renewed. I have asked to not renew it and cancelled it.

The payment went through any way and I have been sending multiple e-mail to get my refund. I have not received any come back from them since.

I am exhausted in trying to get help.

Isabelle Levesque

**Akshay W (thesmilingdoctor)** of US
Jan 23, 2023 | 12:45 am EST

## Scam?! 15 day refund offer not honored

Despite trying out the Mind Valley membership for $399 and canceling it within 10 days as I did not find it useful for my purpose, I've been sent on a merry go round trying to chase the refund which now the "manager has refused to approve" on no ground! Nothing but another click bait scam with flashy website and false promises.

This is what they replied with :

This is Martha again from Mindvalley. Thanks for your patience.

I am so sorry to let you know that the manager has not approved your refund.

**Delcy Hernandez** of US
May 21, 2022 | 1:56 am EDT

⊕ Featured review

I subscribed to mindvalley 3

Months ago and decided to cancel a month later. I have been billed twice after that at $99 each month after having prof on my phone I canceled the subscription on my phone.

**nomenclature** of Exeter, GB
Dec 07, 2022 | 3:45 pm EST | ✔ Verified customer

## unauthorised credit card charge

Hello MindValley

I signed up for MindValley two years running. Following the first year, I was reminded by email that renewal was due and I was able to easily contact someone to discuss the payment -

this year, the renew occurred automatically -

Please help.

I was expecting a renewal email and I am simply aghast at having been charged without my knowing.

I have had a difficult time navigating the site- following the advice for refund simply kept me looping back on myself - and

I have not received a response form the IM option.

To whom do I speak please regarding my financial circumstances and inability to afford another year -

With Thanks

Kara

53.    Mindvalley has a D+ rating on the Better Business Bureau ("BBB") website and is not BBB accredited, there are numerous complaints about Mindvalley's Subscription process and many of these complaints include difficulties in getting refunds and cancelling Subscriptions along with very poor customer service. [25]  Below is just a sampling of those reviews:

---

[25] https://www.bbb.org/us/or/beaverton/profile/online-education/mindvalley-llc-1296-22533877/complaints

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



**Initial Complaint**
03/16/2023

**Complaint Type:** Problems with Product/Service
**Status:** Resolved ❓

I signed up for the Mindvalley program last year in 2022. I had a problem using it and complained and asked for a refund. They didnt give me a refund because I was over 15 days. I thought that was the end of it. I didnt use their programs at all and thought that was the end of it. But I didnt realize I was on auto renewal. I was billed again on 3/12/23 for $399.00. I immediately contacted them but they said they wont refund my money for the charges three days ago. Although their website says they will refund if within 15 days they have again refused to refund my money for this year too. I explained I cant afford this and would like my money refunded. But they havent responded. Therefore I am filing this complaint. I immediately turned off auto renewal when I found out it was on. But, I feel I shouldnt have to pay for this as I dont want it. Thank you, **************************



**Initial Complaint**
03/08/2023

**Complaint Type:** Problems with Product/Service
**Status:** Answered ❓

I purchased a year subscription of mindvalley access for a friend, and was overcharged. Had several exchanges with their customer service and tried to explain that my discount code did not come thru even though it showed up in the calculation and the card was overcharged. Instead of resolving my issue they closed the account (which was not requested) and issued a partial refund. I feel like I am dealing with bots or people with only using a script and not trying to help.



**Initial Complaint**
02/23/2023

**Complaint Type:** Problems with Product/Service
**Status:** Answered ❓

This company charged $499.00 for online coaching services that once I paid for a full year they did not give me access to any of the courses. Their customer service number is disconnected. They advertise refunds within 15 days of purchase if not satisfied but refuse to honor that and are non-responsive when I reached out via email and chat.

**Initial Complaint**
02/21/2023

**Complaint Type:** Problems with Product/Service
**Status:** Answered ❓

I purchased an annual membership with the agreement of a 15 day trial. I didn't care for it because each question I had I've never received any response and so I asked how to get a refund, suppose to be a billing link and easy to get a refund, however there is no billing link and their customer service is just playing games. Probably to win out their 15 day cancel policy. Not a reputable way to run a business, let alone one centered around spirituality.

Amended Class Action Complaint
3:22-cv-08578

20



**Initial Complaint**
02/20/2023

**Complaint Type:** Problems with Product/Service
**Status:** Answered

I understood they have a 15 day return policy and I still understand they dont do refunds once 15 days had elapsed after I started a program. But what I was trying to get then to understand is I never started the WildFit Coaching Certification program. I never even logged into the site and never saw anything. WildFit requires all their coaches have to go through their 90 day Challenge before they can be certified. So my coaching was scheduled for February. In December when I began having financial hardship and requested a refund, the 15 day policy was thrown into my face. I was shocked, dismayed, and confused by their lack of concern about my situation as a single mom trying to raise her daughter. So I let it go until after the holidays. In January when I began to explain again that I never started the program and how I feel I have basically paid $1,294 for nothing. I definitely told them to cancel and to please reconsider refunding my money. I was ignored. No matter how many times I requested follow up I received no replies. ******* had already told me to contact MindValley Support and MV was ignoring me. WF Support told me to contact them if MV continued to ignore me. I did and almost a month later I still havent heard from anyone.



**Initial Complaint**
02/03/2023

**Complaint Type:** Problems with Product/Service
**Status:** Answered

I signed up for that service. I was not able to access my account at all. Kept asking me to sign in and pay the membership. I wish I had already paid $548 on my credit card. I have tried to contact customer service for eight days, I had no response. I emailed iMessage and send messages on WhatsApp. I never got a reply. They keep inviting me to pay again but no one calls me. I have only one week to cancel this and get my money back.



**Initial Complaint**
02/03/2023

**Complaint Type:** Problems with Product/Service
**Status:** Answered

After watching **************************** master class on January 28, 2023, I purchased the MindValley $399 membership in order to join ******************** course. However, despite the fact that my PayPal account was charged the $399 fee, my MindValley membership was never activated. I contacted the *********************** via email, imessage, Whatsup, and ********* I also contacted *********************** on his own website, as well as ****** and ********************** via their ******** accounts. Despite my efforts to communicate the issue and to have it resolved in a timely manner, my emails and messages were completely ignored. All I have received from the MindValley customer support representatives is automatic emails that are vague and have not amounted to any efficient action and palpable outcome. Unfortunately, I have not been able to find a phone number where I could reach the MindValley *********************** so I could have this issue resolved as soon as possible. I requested that the $399 membership fee be refunded in its entirety, but I have not heard from anyone in that regard yet.



**Initial Complaint**
02/01/2023

**Complaint Type:** Problems with Product/Service
**Status:** Answered ❓

Self-Help seminars purchased on February 01,2023. The app claims that I never purchased the program. The business address doesnt exist, the phone number doesnt accept calls and the ******** page connects me to a page in ********!! Ive sent messages by email with a response that someone will reply soon. And Ive sent messages via ******** messenger-no reply. I purchased the program yesterday, February 01,2023 in the amount of $99.00. *** requested a a full refund because Im allowed a 15-day trial period.. thats not being honored!!



**Initial Complaint**
01/26/2023

**Complaint Type:** Billing/Collection Issues
**Status:** Resolved ❓

I have a $500 annual membership with Mindvalley and I really enjoy their product! I enjoy it so much that I tried to purchase an annual membership for a friend of mine. I clicked on this link from ******
***************************************************************************************************

and entered her email address and my payment information. My credit card was charged $399.00, but she was never sent account information. I have tried contacting customer support but they are not responding. I don't want a refund, i want her account to be set up, but have no way of contacting anyone for help!



**Initial Complaint**
01/25/2023

**Complaint Type:** Problems with Product/Service
**Status:** Answered ❓

I purchased a membership though a company named Mindvalley. I payed $598.00 and even when the money was debited from my account, they did not give me access to the membership or a refund. Unfortunately, there is no human customer service. The robots answer is always that someone will get back to me, but no one does.



**Initial Complaint**
11/09/2022

**Complaint Type:** Problems with Product/Service
**Status:** Answered ❓

November 6, 2022 I signed up for MindValley and paid the $99. I have been unable to open the classes and have now tried to request a refund. **************** is now available and they have disconnected their customer service phone number. Please have them refund my money.************* ********************* todays date 11/9/2022

**Initial Complaint**
08/30/2022

**Complaint Type:** Problems with Product/Service
**Status:** Answered ❓

On August 24,2022 I ordered a Mindvalley membership for $399.00. I was notified by email that my payment was received and I now had access as a member to their courses. I could log in to their site and app but their sites claimed I needed to join to receive access? When I checked my account billing it stated the a refund was not possible be they had not received payment? I am still within the 15 day refund trial period and have been unsuccessful in reaching Mindvalleys customer service. They have my money but I have no access to their courses. My profile info is w4f6rcbrnx.

1

2



**Initial Complaint**                                    **Complaint Type:** Problems with Product/Service
06/07/2022                                               **Status:** Answered ❓

I'd like to file a complaint against MindValley, LLC, ***** Fargo and PayPal due to issues
stemming from a yearly subscription renewal for almost $500. There is a complicated history
that I can provide documentation of, but I am VERY DISTURBED by the business practices of
at least one, but possibly all three of these businesses. In short, this is what happened:
February 2, 2021, I authorized the purchase of a yearly subscription to MindValley through
PayPal for $499 on my personal credit card through ***** Fargo, ending **** A year later, on
February 2, 2022, my BUSINESS card, ending ****, was charged $499 through Paypal for the
yearly MindValley subscription. I emailed MindValley and they agreed to stop my
subscription and give me a refund if I took a survey, which I did. I also disputed the charge
through Paypal (the dispute is still open, reference number PP-D-*********) and ***** Fargo (the
dispute, claim *********** was found disfavorably, despite my records showing that MindValley
agreed to the refund and the VERY DISTURBING FACT that they randomly had access to
charge my BUSINESS account, despite never having information or authorization to do so.).
Now, despite having paid $499 for the membership, I do not have access to my paid
subscription and MindValley is not answering my emails and their phone number goes to a
voicemail that hangs up. I want assistance in getting my $499 back from MindValley, or
access to the subscription that I have now, unwillingly, paid for. I want PayPal held
accountable for giving out my business financial information to MindValley without my
authorization. I also want ***** Fargo held accountable for not protecting my business
account and, against all logic, finding in favor of MindValley despite having an email directly
from them granting the refund. Additionally, but significantly less importantly, MindValley
says they sent an email reminder of the yearly renewal, but they did not.

**Initial Complaint**                                    **Complaint Type:** Billing/Collection Issues
05/11/2022                                               **Status:** Answered ❓

*********** charged ****** on my credit card. I had sent five emails in since 5/9/22, which is
when I received a notice from *********** that they had renewed my membership. I do not
want this membership, and there is no way to contact anyone. (Or if they did read my emails,
they either are not the proper department, or they are ignoring me) Their policy says they
don't give refunds, which is ridiculous as I did not receive prior renewal authorization. I want
my refund. I will be disputing this charge with my credit card company.

## C.  California's Automatic Renewal Law

54.     In 2010, the California Legislature enacted the Automatic Renewal Law ("ARL"),

Cal. Bus. & Prof. Code §§ 17600, et seq., with the intent to "end the practice of ongoing charging

of consumer credit or debit cards or third party payment accounts without the consumers' explicit

consent for ongoing shipments of a product or ongoing deliveries of service."  Cal. Bus. & Prof.

Code § 17600 (statement of legislative intent).  More recently, in 2018, California's Senate Bill

313 amended Section 17602 of the ARL, adding new requirements meant to increase consumer

protections for, among other things, orders that contain free trial and promotional pricing, and subscription agreements entered into online.

55. The ARL makes it "unlawful for any business making an automatic renewal or continuous service offer to a consumer in this state to do any of the following:"

(1) Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer. If the offer also includes a free gift or trial, the offer shall include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchasing agreement pricing will change upon conclusion of the trial.

(2) Charge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time.

(3) Fail to provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the automatic renewal offer or continuous service offer includes a free gift or trial, the business shall also disclose in the acknowledgment how to cancel, and allow the consumer to cancel, the automatic renewal or continuous service before the consumer pays for the goods or services.

**Cal. Bus. & Prof. Code § 17602(a)(1)-(3).**

56. Section 17602(b) of the ARL further provides:

A business that makes an automatic renewal offer or continuous service offer shall provide another cost-effective, timely, and easy-to-use mechanism for cancellation that shall be described in the acknowledgment specified in paragraph (3) of subdivision (a).

**Cal. Bus. & Prof. Code § 17602(b).**

57.     Additionally, following the 2018 amendment to the ARL, the updated law requires e-commerce sellers doing business in California to allow online cancellation of auto-renewing memberships or recurring purchases that were initiated online.  Specifically, Section 17602(c) provides:

> [A]consumer who accepts **an automatic renewal or continuous service offer online shall be allowed to terminate the automatic renewal or continuous service exclusively online**, which may include a termination email formatted and provided by the business that a consumer can send to the business without additional information.

Cal. Bus. & Prof. Code § 17602(c) (emphasis added).  The updated ARL also requires a seller who provides an automatic offer that includes a free gift, trial, or promotional pricing to notify consumers about how to cancel the auto-renewal before they are charged.  Sellers must also explain the price to be charged when the promotion or free trial ends.  If the initial offer is at a promotional price that is only for a limited time and will increase later, the seller must obtain consumer consent to the non-discounted price prior to billing.  Id.

58.     Section 17601(a) of the ARL defines the term "Automatic renewal" as a "plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term."  Cal. Bus. & Prof. Code § 17601(a).

59.     Section 17601(b) of the ARL defines the term "Automatic renewal offer terms" as "the following clear and conspicuous disclosures:  (1) That the subscription or purchasing agreement will continue until the consumer cancels.  (2) The description of the cancellation policy that applies to the offer.  (3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known.  (4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.  (5) The minimum purchase obligation, if any."  Cal. Bus. & Prof. Code § 17601(b).

60.    Pursuant to Section 17601(c) of the ARL, "clear and conspicuous" or "clearly and conspicuously" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbol ls or other marks, in a manner that clearly calls attention to the language." Cal. Bus. & Prof. Code § 17601(c).

61.    Finally, Section 17603 of the ARL provides that where a "business sends any goods, wares, merchandise, or products to a consumer, under a continuous service agreement or automatic renewal of a purchase, without first obtaining the consumer's affirmative consent," the material sent will be deemed "an unconditional gift to the consumer, who may use or dispose of the same in any manner he or she sees fit without any obligation whatsoever on the consumer's part to the business." Cal. Bus. & Prof. Code § 17603.

62.    As alleged below, Mindvalley's website, mobile apps, and APIs systematically violate Sections 17602(a)(l), 17602(a)(2), and 17602(a)(3) of the ARL.

**D.  Mindvalley's Subscription Enrollment Process**

63.    At all relevant times, Defendant offered various subscriptions plans on a recurring basis monthly ad annual basis, and all plans automatically renew at the end of the defined renewal term unless the subscriber cancels. Defendant's monthly and annual Subscriptions plans constitute automatic renewal and/or continuous service plans or arrangements for the purposes of Cal. Bus. & Prof. Code § 17601.

64.    The enrollment process for each Mindvalley Subscription is substantially the same, regardless of the medium used.

65.    For the purposes of the ARL and this Complaint, the "relevant portion of the Checkout Page" refers to the text of that portion of the Checkout Page that appears "in visual proximity to the request for consent to the offer[,]" which in this case pertains to the latter block of text located immediately above and below the final green rectangular box labeled as the "COMPLETE MY ORDER" button that customers must press in order to complete the checkout process.

66.    By way of example, at least as of November 2022, when a consumer signed up for a Mindvalley "free trial" or pay-in-advance monthly or annual Subscription, via his or her computer web browser, the "relevant portion of the Checkout Page" refers to the disclosures in the block of text located immediately above and below the final green rectangular box labeled as the "COMPLETE MY ORDER" button (i.e., the "request for consent"), which contains the following language and appearance:



**Subscriptions with a Trial Period**

If You don't cancel a monthly or annual subscription before the end of the trial period (free or otherwise), Company will collect the full payment for the subscription (monthly or annual) after the trial period ends. For instance, for an annual subscription with a seven (7) days trial, the full payment will be collected on the eighth (8) day of the trial's start date, and the subsequent payment for the annual subscription will be collected on the three hundred and sixty-sixth (366) day of the trial's start date.

67.     Regardless of how the consumer subscribes (via the Mindvalley Website on its mobile or desktop format), and irrespective of which particular subscription plan the consumer selects, Defendant fails to disclose the full terms of its auto-renewal program either before or after checkout, and it never requires the individual to read or affirmatively agree to any terms of service, i.e., by requiring consumers to click a checkbox next to the automatic renewal offer terms before consumers complete the checkout process and submit their orders for Defendant's "free" trial subscriptions.  Defendant uniformly fails to obtain any form of consent from – or even provide effective notice to – its subscribers before charging consumers' Payment Methods on a recurring basis.

### E. Defendant Violates California's Automatic Renewal Law

68.     At all relevant times, Defendant failed to comply with the ARL in three ways: (i) Defendant failed to present the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer before the subscription or purchasing agreement was fulfilled, in violation of Cal. Bus. & Prof. Code § 17602(a)(l); (ii) Defendant charged Plaintiff's and the proposed class members' Payment Methods without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of Cal. Bus. & Prof. Code § 17602(a)(2); and (iii) Defendant failed to provide an acknowledgment that included the automatic renewal offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in violation of Cal.Bus. & Prof. Code §§ 17602(a)(3).

       i.      **Defendant Fails To Clearly And Conspicuously Present Mindvalley's Subscription Terms Before The Subscription Agreement Is Fulfilled And In Visual Proximity To The Request For Consent To The Offer.**

69.     The relevant portion of Defendant's Checkout Page does not clearly and conspicuously present the complete "automatic renewal offer terms[,]" as defined by Cal. Bus. & Prof. Code §17601(b).

70.    Specifically, Defendant fails to present a complete "description of the cancellation policy that applies to the offer."  Cal. Bus. & Prof. Code § 17601(b)(2).  With respect to cancellation, the relevant portion of the Checkout Page states in very small font: "Billed automatically every [month] [year] unless you cancel the subscription."  The Checkout Page contains no explanation of how to cancel.  For example, the Checkout Page does not mention that subscribers cancel their Mindvalley subscription by choosing "Account Settings" and then by clicking in "My Account" and then "Billing" and then press the tiny "Cancel Subscription" hyperlink.

71.    By way of example, at least as of November 2022, is the "Cancel Subscription" page.



72.    Additionally, the Checkout Page does not state that a subscriber who cancels after the 7-day free trial will not be eligible for a refund after his or her payment method is charged.

73.    Defendant therefore failed to place consumers on notice of these aspects of Defendant's cancellation policy in accordance with statute because the ARL requires that companies provide such information "in visual proximity to the request for consent to the

[automatic renewal] offer," and in this case Defendant has failed to do so.  Cal. Bus. & Prof. Code § 17602(a)(1).

74.     Pursuant to Section 17601(c) of the ARL, "clear and conspicuous" or "clearly and conspicuously" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." Cal. Bus. & Prof. Code § 17601(c).

75.     Defendant's inadequate "automatic renewal terms" fall well short of the mark from being conspicuous as defined under the ARL.

76.     Specifically, the terms are not "clear and conspicuous" because they are smaller than the text featured in and under the payment information. Additionally, the terms, which appear below the payment information are in a size that is less than 10-point and are illegible to the naked eye without increasing the zoom level even on a large computer screen.

77.     At the same time, the illegible terms are much less obvious or noticeable than the text in the middle of the Checkout Page with a large font size and with parts that are in bold.

78.     Finally, the terms are clearly overshadowed by the large call-to-action button which is in a green rectangular box labeled as the "COMPLETE MY ORDER".

79.     It is clear from the design of Defendant's Checkout Page that Defendant intends to mislead prospective consumers, and has misled consumers, into purchasing its Mindvalley's Subscriptions.

80.     Based on the above, Defendant's deceptive Checkout Page does not "clearly call attention" to its otherwise inadequate "automatic renewal terms" in violation of Cal. Bus. & Prof. Code § 17602(1).

81.     Defendant therefore fails to present pertinent information regarding cancellation "before the subscription or purchasing agreement is fulfilled and in visual proximity[] … to the request for consent to the offer," as the ARL requires.  Cal. Bus. & Prof. Code § 17602(a)(1).

ii.    **Defendant Fails To Clearly And Conspicuously Present Mindvalley's Subscription Automatic Renewal Terms.**

82.    The relevant portion of Defendant's Checkout Page does not clearly and conspicuously present the complete "automatic renewal offer terms[,]" as defined by Cal. Bus. & Prof. Code §17601(b). First, Defendant fails to clearly and conspicuously disclose that "the subscription or purchasing agreement will continue until the consumer cancels" as defined by Cal. Bus. & Prof. Code § 17601(b)(1). As illustrated by the Checkout Page above, although the relevant portion mentions that a customer will be "Billed automatically every [month] [year] unless you cancel the subscription." this disclosure is inadequate because it is in tiny, faded font and it is very difficult to see and/or read.   Thus fails it to disclose "[t]hat the subscription or purchasing agreement will continue until the consumer cancels" in the manner required by the statute. Cal. Bus. & Prof. § 17601(b)(1).   For the same reasons stated above, Defendant also fails to disclose the "length of the automatic renewal term or that the service is continuous" as defined by Cal. Bus. & Prof. Code § 17601(b)(4).

83.    Second, Defendant fails to disclose the "description of the cancellation policy that applies to the offer" as defined by Cal. Bus. & Prof. Code § 17601(b)(2). Specifically, although the Checkout Page states that the ""Billed automatically every [month] [year] unless you cancel the subscription", it fails to indicate the cutoff date for doing so. Specifically, the cancellation policy on the Checkout Page does not disclose that a consumer's Subscription automatically renews unless auto-renew is turned off at least 24-hours before the end of the current period.[26] Further, neither the Checkout Page nor the terms of service on the Mindvalley Website indicates the time zone that applies to the cutoff date—e.g., Eastern, Central, or Pacific Time. Aside from being inconspicuous, as discussed in greater depth below, the Checkout Page fails to disclose the "description of the cancellation policy that applies to the offer" in the manner required by statute. Cal. Bus. & Prof. § 17601(b)(2).

---

[26] https://www.mindvalley.com/terms-of-use

Amended Class Action Complaint
3:22-cv-08578

31

84.     Finally, Defendant fails to disclose the "recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known" as defined by Cal. Bus. & Prof. Code § 17601(b)(3). Specifically, although the Checkout Page indicates that consumers' will be "Billed automatically….," and that they will be either charged $99.00 per month or $499.00 per year, Defendant does not indicate how much money consumers will be charged additional fees at checkout. To make matters worse, the Checkout Page also fails to disclose that the amount billed each Monthly Period or Yearly Period may vary due to promotional offers, changes in your subscription, and changes in applicable taxes  Therefore, the Checkout Page fails to disclose the "recurring charges that will be charged to the consumer's credit or debit card or payment …and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known" as defined by Cal. Bus. & Prof. Code § 17601(b)(3).

### iii.     Defendant Fails To Obtain Consumers' Affirmative Consent To The Automatic Renewal Terms Associated With Mindvalley's Subscriptions.

85.     Defendant does not require consumers to read or affirmatively agree to any terms of service associated with the Mindvalley's Subscriptions, i.e., by requiring consumers to select or click a "checkbox" next to the automatic renewal offer terms to complete the checkout process. In fact, Defendant does not at any point during the checkout process require consumers to read or affirmatively agree to any terms of service associated with their Subscriptions. Accordingly, when Defendant automatically renews customers' Mindvalley Subscriptions, Defendant charges consumers' Payment Methods without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of Cal. Bus. & Prof. Code § 17602(a)(2).

86.     Specifically, Defendant does not at any point during the checkout process require consumers to read or affirmatively agree to any terms of service associated with their Mindvalley's Subscriptions, e.g., by requiring consumers to select or click a "checkbox" next to the automatic renewal offer terms to complete the checkout process.

### iv.    Defendant Fails To Provide A Post-Checkout Acknowledgment That Clearly And Conspicuously Discloses The Required Mindvalley's Subscription Offer Terms.

87.     Finally, after Plaintiff and the proposed class members subscribed to one of Defendant's Mindvalley's Subscription plans, Defendant sent email follow-ups regarding their purchases (the "Acknowledgment Emails").  By way of example, as of 2022 the body of the email contained, in relevant part, the following text and images:



88.     The purchase confirmation does not provide: that the subscription "will continue until the consumer cancels[,]" Cal. Bus. & Prof. Code § 17601(b)(1); a "description of the cancellation policy that applies to the offer[,]" Cal. Bus. & Prof. Code § 17601(b)(2); a statement of "[t]he recurring charges that will be charged to the consumer's [Payment Method] as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, [and] if that is the case, and the amount to which the charge will change, Cal. Bus. & Prof. Code § 17601(b)(3); or "[t]he length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer[,]" Cal. Bus. & Prof. Code § 17601(b)(4).  As such, the Acknowledgment Email fails to "include[] the automatic renewal offer terms … and information regarding how to cancel in a manner that is capable of being retained by the consumer[,]" in violation Cal. Bus. & Prof. Code §17602(a)(3).

89.     At all relevant times, Defendant has been well aware that its Subscriptions fail to comply with California's ARL as evidenced by the number of complaints lodged against it on Trustpilot's, Complaints Board's and the BBB's websites. The facts giving rise to Plaintiff's claims are materially the same as the Class she seeks to represent.

90.     By and through these actions, Defendant has charged Plaintiff's and Class members' Payment Methods in direct violation of the ARL.  As a result, all goods, wares, merchandise, or products sent to Plaintiff and the Class under the automatic renewal of continuous service agreements are deemed to be "unconditional gifts" pursuant to Cal. Bus. & Prof. Code § 17603.

## CLASS ACTION ALLEGATIONS

91.     **Class Definition**: Plaintiff brings this action pursuant to Rule 23(a) of the Federal Rules of Civil Procedure on behalf of a class of similarly situated individuals, defined as follows (the "Class"): The Class, preliminarily defined as two subclasses ("Subclasses"), is as follows:

a.     The Multistate Class, preliminarily defined as all Mindvalley customers in the United States who were automatically enrolled into and charged for at least one

month of Mindvalley's membership by Defendant at any time from [applicable statute of limitations period] to the date of judgment.

b. All persons in California who, within the applicable statute of limitations period, up to and including the date of final judgment in this action, incurred renewal fee(s) in connection with Defendant's subscription offerings.

92. Specifically excluded from the Class are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

93. Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

94. **Numerosity.** Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, the Class comprises at least thousands of consumers throughout California. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

95. ***Commonality and Predominance***. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to: (a) whether Defendant's Subscriptions constitute "Automatic renewal[s]" within the meaning of Cal. Bus. & Prof. Code § 17601(a); (b) whether Defendant failed to present the automatic renewal offer terms, or continuous service offer terms, in a clear and conspicuous manner before the subscription or purchasing agreement was fulfilled and in visual proximity to the request for consent to the offer, in violation of Cal. Bus. & Prof. Code § 17602(a)(l); (c) whether Defendant charged Plaintiff's and Class members' Payment Method for an automatic renewal service without first obtaining their affirmative consent to the automatic renewal offer terms in violation of Cal. Bus. & Prof. Code§" 17602(a)(2); (d) whether Defendant failed to provide an acknowledgment that included the

automatic renewal or continuous service offer terms, cancellation policy, and information on how to cancel in a manner that is capable of being retained by Plaintiff and the Class, in violation of Cal. Bus. & Prof. Code § 17602(a)(3); (e) whether the goods and services provided by Defendant are deemed an "unconditional gift" in accordance with Cal. Bus. & Prof. Code § 17603; (f) whether Defendant's conduct alleged herein violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*, California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, and/or California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (g) whether Defendant's conduct alleged herein constitutes conversion and/or unjust enrichment; (h) whether Plaintiff and the Class are entitled to damages and/or restitution; (i) whether Defendant should be enjoined from further engaging in the misconduct alleged herein; and (j) whether Plaintiff and the Class are entitled to attorneys' fees and costs under California Code of Civil Procedure § 1021.5.

96.    ***Typicality.*** The claims of Plaintiff are typical of the claims of the Class in that Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to obtain Plaintiff's and the Class' affirmative consent to the automatic renewal offer terms or continuous service offer terms associated with the Mindvalley Subscriptions before charging their Payment Methods.

97.    ***Adequacy***. Plaintiff will fairly and adequately protect Class members' interests. Plaintiff has no interests antagonistic to Class members' interests, and Plaintiff has retained counsel that have considerable experience and success in prosecuting complex class-actions and consumer-protection cases.

98.    ***Superiority***. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Class; the Class is readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

**COUNT I**
**Violation of the Electronic Funds Transfer Act**
**15 U.S.C. 1693, et seq.**
**(On behalf of Plaintiff and Nationwide EFTA Subclass)**

99.    Plaintiff incorporates the previous allegations as though fully set forth herein.

100.    Plaintiff seeks to recover for Mindvalley's violations of the Electronic Funds Transfer Act on behalf of herself and the Nationwide EFTA Subclass.

101.    The EFTA provides a basic framework establishing the rights, liabilities, and responsibilities of participants in an electronic fund transfer system. 15 U.S.C. §§ 1693 et seq. The "primary objective" of the EFTA "is the provision of individual consumer rights." Id. § 1693(b).

102.    Any waiver of EFTA rights is void. "No writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by this subchapter." 15 U.S.C. § 1693l.

103.    Mindvalley's transfers of money from the bank accounts of Plaintiff and members of the Nationwide EFTA Subclass, via their debit cards, as alleged herein, are "electronic fund transfers" within the meaning of the EFTA and the EFTA's implementing regulations, known as Regulation E and codified at 12 C.F.R. §§ 205 et seq. An "electronic fund transfer" means "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account." 15 U.S.C. § 1693a(7). The term is expressly defined to include "[t]ransfers resulting from debit card transactions, whether or not initiated through an electronic terminal." 12 C.F.R. § 205.3(b)(v).

104.    The EFTA defines the term "preauthorized electronic transfer" as "an electronic fund transfer authorized in advance to recur at substantially regular intervals." 15 U.S.C. § 1693a(9). The Official Staff Interpretation of Regulation E describes a "preauthorized electronic transfer" as "one authorized by the consumer in advance of a transfer that will take place on a recurring basis, at substantially regular intervals, and will require no further action by the consumer to initiate the transfer." 12 C.F.R. Part 205, Supp. I, § 205.2(k), cmt. 1.

105.    Section 1693e(a) of the EFTA prohibits preauthorized electronic transfers without written authorization: "A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." 15 U.S.C. § 1693e(a). Similarly, Regulation E provides: "Preauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer." 12 C.F.R. § 205.10(b).

106.    Plaintiff and members of the Nationwide EFTA Subclass each maintained an "account" as that term is defined in 15 U.S.C § 1693a(2) and are "consumers" within the meaning of 15 U.S.C. § 1693a(5).

107.    Mindvalley uniformly and routinely initiated preauthorized electronic fund transfers and took money from the bank accounts of the Plaintiff and members of the Nationwide EFTA Subclass without obtaining their written authorization for the transfers, as required by the EFTA and Regulation E.  Mindvalley also uniformly and routinely failed to provide a copy of any such written authorization to Plaintiff and the Nationwide EFTA Subclass members from whose bank accounts Mindvalley took preauthorized electronic fund transfers for monthly membership fees.

108.    Mindvalley took funds from bank accounts managed by Plaintiff via debit card. In none of these instances did Mindvalley obtain Plaintiff's written authorization, nor did Mindvalley provide Plaintiff with copies of any such written authorizations.

109.    The Official Staff Interpretation of Regulation E explains, "when a third-party payee," such as Mindvalley, "fails to obtain the authorization in writing or fails to give a copy to the consumer … it is the third-party payee that is in violation of the regulation." 12 C.F.R. Part 205, Supp. I, § 205.10(b), cmt. 2.

110.    As a direct and proximate result of Mindvalley's violations of the EFTA and Regulation E, Plaintiff and class members have suffered damages in the amount of the unauthorized debits taken by Mindvalley. 15 U.S.C. § 1693m. As a further direct and proximate

result of Mindvalley's violations of the EFTA and Regulation E, Plaintiff and the Nationwide EFTA Subclass members are entitled to recover statutory damages in the amount of "the lesser of $500,000 or 1 per centum of the net worth of the defendant." Id. § 1983m(a)(2)(B).

111.    Pursuant to 15 U.S.C. § 1693m, Plaintiff and the Nationwide EFTA Subclass are also entitled to recover costs of suit and attorneys' fees from Mindvalley.

**COUNT II**
**Violations of California's Unfair Competition Law ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**
**(On behalf of Plaintiff and California Subclass)**

112.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

113.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

114.    The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act[.]" Cal. Bus. & Prof. Code § 17200. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204. Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

115.    As alleged below, Defendant has committed unlawful and/or unfair business practices under the UCL by: (a) representing that Defendant's goods and services have certain characteristics that they do not, in violation of Cal. Civil Code § 1770(a)(5); (b) advertising goods and services with the intent not to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9); and (c) converting to Defendant's own use and benefit money that rightfully belongs to Plaintiff and the Class.

116.    Additionally, at all relevant times, Defendant has violated, and continues to violate, the UCL's proscription against engaging in unlawful and/or unfair conduct as a result of its violations of the ARL, Cal. Bus. & Prof. Code §§ 17600, *et seq.* Specifically, Defendant failed,

and continues to fail, to: (a) provide the auto-renewal terms associated with its Mindvalley Subscription "in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity[] … to the request for consent to the offer," in violation of Cal. Bus. & Prof. Code § 17602(a)(1); (b) obtain the affirmative consent of Plaintiff and the Class to those terms before charging their Payment Method, in violation of Cal. Bus. & Prof. Code § 17602(a)(2); and (c) provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in violation of Cal. Bus. & Prof. Code §§ 17602(a)(3). Defendant also makes it exceedingly difficult and unnecessarily confusing for consumers to cancel their Mindvalley Subscriptions, in violation of Cal. Bus. & Prof. Code § 17602(b).

117.    Each of these acts and practices constitutes an independent violation of the ARL, and thus an independent violation of the UCL.

118.    All products received from Defendant in violation of the ARL, Cal. Bus. Prof. Code §§ 17602, *et seq.*, constitute "unconditional gifts." *See* Cal. Bus. Prof. Code § 17603. As a direct and proximate result of Defendant's unlawful and/or unfair practices described herein, Defendant has received, and continues to hold, unlawfully obtained property and money belonging to Plaintiff and the Class in the form of payments made by Plaintiff and the Class for their Mindvalley Subscriptions. Defendant has profited from its unlawful and/or unfair acts and practices in the amount of those business expenses and interest accrued thereon.

119.    Defendant's acts and omissions as alleged herein violate obligations imposed by statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

120.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

121.    Defendant's acts, omissions, nondisclosures, and misleading statements as alleged herein were and are false, misleading, and/or likely to deceive the consuming public.

122.    Plaintiff and the members of the Class have suffered a substantial injury in fact and lost money by virtue Defendant's acts of unfair competition, which caused them to purchase the Mindvalley Subscriptions. Had Defendant complied with its disclosure obligations under the ARL, Plaintiff and members of the Class would not have purchased their Mindvalley Subscriptions or would have cancelled their Mindvalley Subscriptions prior to the renewal of the subscriptions, so as not to incur additional fees. Thus, Plaintiff and members of the Class were damaged and have suffered economic injuries as a direct and proximate result of Defendant's unlawful and/or unfair business practices.

123.    Defendant's violations have continuing and adverse effects because Defendant's unlawful conduct is continuing, with no indication that Defendant intends to cease this unlawful course of conduct. The public and the Class are subject to ongoing harm because the unlawful and/or unfair business practices associated with the Mindvalley Subscriptions are still used by Defendant today.

124.    Plaintiff and the Class seek restitution pursuant to Cal. Bus. & Prof. Code § 17203 of all amounts that Defendant charged or caused to be charged to Plaintiff's and the Class's Payment Method in connection with their Mindvalley Subscriptions during the four years preceding the filing of this Complaint. Defendant should be required to disgorge all the profits and gains it has reaped and restore such profits and gains to Plaintiff and the Class, from whom they were unlawfully taken.

125.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff and members of the Class seek a court order enjoining Defendant from such future misconduct, and any other such orders that may be necessary to rectify the unlawful business practices of Defendant.

126.    Ms. Perkins brings this action as private attorneys general and to vindicate and enforce an important right affecting the public interest. Plaintiff and the Class are therefore entitled to an award of attorneys' fees under Code of Civil Proc. § 1021.5 for bringing this action.

**COUNT III**
**Conversion**
**(On behalf of Plaintiff and Nationwide EFTA Subclass)**

127.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

128.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

129.    As a result of charges made by Defendant to Plaintiff's and Class members' Payment Methods without authorization and in violation of California law, Defendant has taken money that belongs to Plaintiff and the Class.

130.    The amount of money wrongfully taken by Defendant is capable of identification.

131.    Defendant engaged in this conduct knowingly, willfully, and with oppression, fraud, and/or malice within the meaning of Cal. Civil Code § 3294(c).

132.    As a result of Defendant's actions, Plaintiff and the Class have suffered damages.

**COUNT IV**
**Violations of California's False Advertising Law ("FAL"),**
**Cal. Bus. & Prof. Code §§ 17500, *et seq*.**
**(On behalf of Plaintiff and California Subclass)**

133.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

134.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

135.    California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, … in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

136.    Defendant committed acts of false advertising, as defined by § 17500, by intentionally making and disseminating statements to consumers in California and the general public concerning Defendant's products and services, as well as circumstances and facts connected to such products and services, which are untrue and misleading on their face and by omission, and which are known (or which by the exercise of reasonable care should be known) by Defendant to be untrue or misleading. Defendant has also intentionally made or disseminated such untrue or misleading statements and material omissions to consumers in California and to the public as part of a plan or scheme with intent not to sell those services as advertised.

137.    Defendant's statements include but are not limited to representations and omissions made to consumers before and after enrollment in Defendant's Mindvalley Subscriptions regarding the terms of payment for and cancellation of a consumer's automatic payments. Such representations and omissions on the Checkout Page constitute false and deceptive advertisements.

138.    Defendant's actions in violation of § 17500, as described herein, were false and misleading such that the general public is and was likely to be deceived. Plaintiff and the members of the Class were deceived by Defendant's statements and omissions made online when they signed up and started paying for their Mindvalley Subscriptions, and there is a strong probability that other California consumers and members of the public were also or are likely to be deceived as well. Any reasonable consumer would be misled by Defendant's false and misleading statements and material omissions. Plaintiff and other members of the Class did not learn of Defendant's cancellation and automatic payment policies until after they had already signed up and started paying for Defendant's Mindvalley Subscription. They relied on Defendant's statements and omissions to their detriment.

139.    Plaintiff and the Class lost money or property as a result of Defendant's FAL violations because they would not have purchased the Mindvalley Subscriptions on the same terms if the true facts were known about the product and the Mindvalley Subscriptions do not have the characteristics as promised by Defendant.  Plaintiff, individually and on behalf of all similarly situated California consumers, seeks individual, representative, and public injunctive relief and

any other necessary orders or judgments that will prevent Defendant from continuing with its false and deceptive advertisements and omissions; restitution that will restore the full amount of their money or property; disgorgement of Defendant's relevant profits and proceeds; and an award of costs and reasonable attorneys' fees.

### COUNT V
### Violations of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*
### (On behalf of Plaintiff and California Subclass)

140.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

141.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

142.    Plaintiff and the members of the Class are "consumers" within the meaning of Cal. Civil Code § 1761(d) in that Plaintiff and the Class sought or acquired Defendant's goods and/or services for personal, family, or household purposes.

143.    Defendant's selection and/or subscription offers are "goods" and/or "services" within the meaning of Cal. Civil Code § 1761(a) and (b). The purchases by Plaintiff and the Class are "transactions" within the meaning of Cal. Civil Code § 1761(e).

144.    The acts and practices of Defendant as described above were intended to deceive Plaintiff and the Class as described herein, and have resulted, and will result, in damages to Plaintiff and the Class. These actions violated, and continue to violate, the CLRA in at least the following respects: (a) Defendant's acts and practices constitute representations or omissions deceiving that the Mindvalley Subscriptions have characteristics, uses, and/or benefits, which they do not, in violation of Cal. Civil Code §1770(a)(5); and (b) Defendant's acts and practices constitute the advertisement of the goods in question without the intent to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9).

145.    Plaintiff and the Class suffered economic injury as a direct result of Defendant's misrepresentations and/or omissions because they were induced to purchase Mindvalley

Subscriptions and/or pay renewal fees they would not have otherwise purchased and/or paid. Had Defendant fully and clearly disclosed the terms associated with the Mindvalley Subscriptions, Plaintiff and the Class would have not subscribed to Mindvalley or they would have cancelled their Mindvalley Subscriptions earlier, *i.e.*, prior to the expiration of the initial subscription period.

146.    Plaintiff and the California Subclass members presently seek only injunctive relief under this Count.  If Defendant fails to remedy the violations alleged herein within 30 days of receipt of Plaintiff's notice, Plaintiff will amend this Complaint to add claims damages pursuant to the CLRA.

**COUNT VI**
**Violations of California's Consumers Legal Remedies Act ("CLRA"),**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On behalf of Plaintiff and California Subclass)**

147.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

148.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

149.    Plaintiff and the Class conferred benefits on Defendant by purchasing the Mindvalley Subscriptions.

150.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and the Class's purchases of the Mindvalley Subscriptions. Retention of those moneys under these circumstances is unjust and inequitable because Defendant's failure to disclose material terms of the purchase agreement, in violation of California law, induced Plaintiff and the Class to purchase the Mindvalley Subscriptions. These omissions caused injuries to Plaintiff and the Class because they would not have purchased the Mindvalley Subscriptions at all, or on the same terms, if the true facts were known.

**COUNT VII**
**Negligent Misrepresentation**
**(On behalf of Plaintiff and California Subclass)**

151.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

152.     Defendant's practice of failing to adequately advise consumers that they would enter into automatic renewals, failure to provide the acknowledgement required by the Automatic Renewal Laws, and/or failure to provide an easy way to cancel as advertised are material facts that influenced Plaintiffs and the class members' subscription to the service.

153.     At the time Defendant made the misrepresentations, Defendant knew or should have known that the misrepresentations were false, or Defendant made the misrepresentations without knowledge of their truth or veracity.

154.     Plaintiff and the Class members reasonably, justifiably, and detrimentally relied on the misrepresentations and, as a proximate result thereof, have and will continue to suffer damages.

**COUNT VIII**
**Unjust Enrichment**
**(On behalf of Plaintiff and California Subclass)**

155.     Plaintiff incorporates the previous allegations as though fully set forth herein allegation contained elsewhere in this Complaint as if fully set forth herein.

156.     By failing to adequately advise consumers that they would enter into automatic renewals, failure to provide the acknowledgement required by the Automatic Renewal Law, and failure to provide an easy way to cancel as advertised, Defendant was unjustly enriched at the expense of Plaintiffs and class members. It would be inequitable, unjust, and unconscionable for Defendant to retain the profit it received by unauthorized subscription payments.

157.     Plaintiff seeks disgorgement of all proceeds, profits, benefits, and other compensation obtained by Defendant from their improper and unlawful subscription charges, as

well as all other appropriate relief permitted by law of unjust enrichment, including reasonable

attorneys' fees and costs of suit.

### PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

(a)    Issue an order certifying the Classes defined above, appointing the Plaintiff as Class

representative, and designating Milberg Coleman Bryson Phillips Grossman, PLLC, as Class

Counsel;

(b)    Find that Defendant has committed the violations of law alleged herein;

(c)    Determine that Defendant has been unjustly enriched as a result of its wrongful

conduct, and enter an appropriate order awarding restitution and monetary damages to the

Nationwide Class or, alternatively, the State Classes;

(e)    Enter an order granting all appropriate relief including injunctive relief on behalf

of the State Classes under the applicable state laws;

(f)    Render an award of compensatory damages, the exact amount of which is to be

determined at trial;

(g)    Render an award of punitive damages;

(h)    Enter judgment including interest, costs, reasonable attorneys' fees, costs, and

expenses; and

(i)    Grant all such other relief as the Court deems appropriate.

Respectfully submitted March 24, 2023.

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**

s/ *John J. Nelson*
John J. Nelson (SBN 317598)
401 W Broadway, Suite 1760
San Diego, CA 92101
Tel.: (858) 209-6941
jnelson@milberg.com

Scott C. Harris (*pro hac vice*)
Milberg Coleman Bryson
Phillips Grossman, PLLC
900 W. Morgan Street
Raleigh, NC 27603
919-600-5000
sharris@milberg.com

*Attorneys for Plaintiff and the
Proposed Class*

**PROOF OF SERVICE – Electronic Filing**

      I HEREBY CERTIFY that on March 24, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the Electronic Service List for this case.

<u>/s/ John J. Nelson</u>
John J. Nelson